## R. HAUENSTEIN ET AL. *v.* ROBERT GILLESPIE.

1. EVIDENCE. *Exhibits to depositions. Copies of account books and receipt.*

   Where account books—the private property of persons having no interest in the suit—are produced before the commissioner taking a deposition, and correct copies of the entries therein made and attached to the deposition, such copies are admissible in evidence to the same extent that the original books would be; and a correct copy of a receipt attached to the deposition, the original of which was produced by the holder for examination by the commissioner taking the deposition, is equally admissible.

2. GUARDIAN AND WARD. *Sureties on guardian's bond. Estoppel to deny his appointment.*

   When a guardian has, by virtue of his qualification as such, taken possession of, and for years exercised control over, the estate of his ward, the sureties on his bond are estopped by its recitals to deny the validity of his appointment, in a proceeding, after his death, to recover balances due the estate of the ward. *Thomas* v. *Burrus*, 23 Miss., 550, overruled.

FROM the chancery court of Noxubee county.

HON. G. Q. HALL, Special Chancellor.

In 1867 Robert Gillespie was declared a lunatic by an inquisition of lunacy instituted by the probate court of Noxubee county, and a guardian of his estate was appointed. In 1872 Joseph Bardwell was appointed his guardian by the chancery court of Noxubee county, and gave proper bond. Afterwards, in 1878, he was required to give a new bond. Bardwell, under the bond thus executed, was the guardian of said Gillespie until his death in 1893. This is a suit in the chancery court of Noxubee county by Robert Gillespie, by next friend and guardian, against the bondsmen of Joseph Bardwell on the bond given in 1878. The bill alleges that Bardwell, after the execution of the bond sued on, was guilty of many defaults, which were set out in the bill.

Defendants answered, and denied that Robert Gillespie was declared insane upon a duly authorized inquisition of Noxubee county, and that Joseph Bardwell was duly appointed guardian, as alleged in the bill, in 1872. Defendants filed, as an exhibit to their answer, a copy of the records in the probate and chancery courts of Noxubee county in 1867 and 1872, whereby the adjudication of lunacy and the appointment of Bardwell had been made, and contend that this exhibit shows that Robert Gillespie was a resident of the state of Pennsylvania in 1867, when the proceedings declaring said Gillespie a lunatic were had and when Bardwell was appointed guardian, and was not present and was not made a party to the proceedings, either by service of process on him or by publication of notice, and that the court had no jurisdiction over him and no power to adjudge him insane, and that the proceedings were wholly null and void. The bond sued on, which was in the usual form of guardians' bonds, recited that Robert Gillespie was "of Noxubee county." It was shown that Bardwell, who had died before the institution of the suit, without leaving any property subject to execution, had, on his appointment as guardian, taken possession of the estate of his ward, and exercised over it all the powers pertaining to his office as guardian, collecting rents and profits, selling land and collecting the purchase money, collecting dues of the estate by suit, etc.

On the hearing, complainant introduced depositions of various witnesses to show the collections alleged in the bill to have been made by Bardwell, guardian. To the depositions of several of the witnesses there were attached, as exhibits, copies of their account books and of a receipt, which the witnesses produced before the commissioner taking their depositions. They testified that the books were correctly kept by them, and permitted the commissioner to make copies of them, as he also did of the receipt. The witnesses had no interest in the litigation, and the account books and receipt were their private property. Defendant's objection to the admission of these exhibits was over-

ruled.    From a final decree for complainant, defendant appealed.

*Ham, Witherspoon & Witherspoon,* for appellants.

1. The probate court of Noxubee county, in 1867, had jurisdiction only over lunatics residing in that county.    Constitution of 1832, art. 4, § 18; Code 1857, p. 464, art. 155.    In creating courts of probate the constitution had no reference to things or persons out of the state.    1 Freeman on Judgments, §§ 120, 120*a*, and cases cited in note; 1 Black on Judgments, §§ 227, 228; *Cudabac* v. *Strong,* 67 Miss., 705; 12 Am. & Eng. Enc. L., pp. 271, 272.    An order of the probate court appointing a guardian to a lunatic residing beyond the limits of the state would be a mere nullity.    (Counsel here went into a lengthy argument to show that the records filed as an exhibit to their answer, showed that Robert Gillespie was a resident of the state of Pennsylvania at the time he was adjudged a lunatic and when Bardwell was appointed guardian, and was when the bill in this case was filed.)    If Gillespie was a resident of Pennsylvania, the probate court of Noxubee had no jurisdiction over him, and the attempted adjudication of lunacy was null and void.    The jurisdiction of courts is confined within the territorial limits of the state or nation.    1 Freeman on Judgments, §§ 120, 120*a;* 1 Black on Judgments, §§ 227, 228; 12 Am. & Eng. Enc. L., pp. 271, 272.    A court cannot adjudicate upon a person's rights, without having him, either actually or constructively, before it.    A judgment or decree rendered against a party without notice, is void, and may be impeached collaterally.    Notice is necessary, whether required by statute or not.    *Jack* v. *Thompson,* 41 Miss., 49; *Dorr* v. *Rohr,* 3 Am. St. Rep., pp. 108, 109, 110; *Gregory* v. *Stetson,* 133 U. S., 579; *Brown* v. *Levee Commissioners,* 50 Miss., 468; *Ex parte Heyfron,* 7 How., 128; *Marks* v. *McElroy,* 67 Miss., 547; 14 Mass., 223; 4 Gray, 64; *Eslava* v. *Lepretre,* 21 Ala., 522; *McCurry* v. *Hooper,* 12 Ala., 823.    A person

against whom proceedings are instituted to have him adjudged insane, has all the rights of a defendant, and has right to notice whether the statute requires notice or not, and, if he has no notice, the decree adjudging him insane will be null and void. *Evans* v. *Johnson*, 45 Am. St. Rep., 912; *State* v. *Billings*, 43 *Ib.*, 525, and note; *McCurry* v. *Hooper*, 12 Ala., 823; *Eslava* v. *Lepretre*, 21 Ala., 522; 56 Am. Dec., 266; 14 Mass., 222; *Allis* v. *Morton*, 4 Gray, 64.

The basis of this bill is that (1) Robert Gillespie was duly adjudged a lunatic; (2) Bardwell was duly appointed guardian. These allegations of the bill are denied by the answer. Unless Gillespie had been duly adjudged by the probate court of Noxubee county, in 1867, neither the probate court nor the chancery court had any power to appoint a guardian of his person or estate. Code of 1857, art. 155, p. 464. No such proceedings were ever had, and the proceeding for that purpose in the probate court, in 1867, was wholly abortive. The appointment of the guardian at that time, and the subsequent appointment of Bardwell as guardian by the chancery court, were both null and void. 1 Freeman on Judgments, § 120; *Griffith* v. *Frazier*, 8 Cranch, 9. And the bond given by Joseph Bardwell was a nullity, and the defendants in this suit may set up the nullity of the bond. They are not estopped. *Thomas* v. *Burrus*, 23 Miss., 550; *Boyd* v. *Swing*, 38 Miss., 182; *Earl* v. *Crum*, 42 Miss., 165; *Crum* v. *Wilson*, 61 Miss., 233. Bardwell alone was responsible, personally, for any of the property of Robert Gillespie which may have come into his hands or possession. *Thomas* v. *Burrus, supra; Early* v. *Crum, supra.*

The court is invited to a careful examination of the following cases: *Thomas* v. *Burrus, Earl* v. *Crum, Crum* v. *Wilson* and *Boyd* v. *Swing, supra.* The code of 1892 recognized these cases as in full force, for they amended the old law (§ 2098, Code 1880; § 1206, Code 1871; and art. 143, Code 1857) upon the subject of guardians' bonds, by adding thereto these words, "whether the appointment be legal or not."

Code 1892, § 2187.   These words were doubtless added to ob-
viate the effect of these decisions, in which it was held that,
where the appointment of a guardian was illegal and void, the
bond was void and the sureties could not be held liable.

2.  The only authority adduced by complainant to sustain the
admissibility of the copies from the books was the case of *Moody*
v. *Roberts*, 41 Miss., 75.   This case expressly decides that cop-
ies of accounts proved by witnesses to be correctly transcribed
from the books, are not admissible as evidence.   The compe-
tency of books in each case is a question for the court, and it
must appear that they are the regular books of account, cor-
rectly kept and containing the original entries of the transac-
tions.   It is going far enough to permit the original book
itself, after being inspected by the court, to be admitted as
evidence.   *Moody* v. *Roberts*, *supra*.   The rule is the same in
equity as at law.   13 Smed. & M., 720.

*Ames & Drake*, for appellee.

The adjudication of appellee's unsoundness of mind and the
appointment of the first guardian were made by the probate
court of Noxubee county, and the appointment of Bardwell to ·
the guardianship was made by the chancery court of said
county.   The objections to them urged in this case were raised
by demurrer on the former appeal, when it was decided that
the proceedings in question were not open to collateral attack
in this case.   *Gillespie* v. *Hauenstein*, 72 Miss., 838.   The
court did not discuss the reasons for the holding, but referred
to another case as decisive—*Ames* v. *Williams*, 72 Miss., 760.

If the original inquisition of lunacy is defective and shows
want of jurisdiction in the court, defendants, who solemnly as-
serted in their bond that Bardwell was "guardian of Robert
Gillespie, a lunatic of said county," and so enabled him for
more than fifteen years to control and misappropriate the funds
of one whose actual lunacy they do not deny, ought to be
estopped from denying what they have so solemnly and con-

tinuously asserted to the damage of appellee. The record shows that the court was on the point of removing Bardwell for insufficiency of his bond, and that defendants came forward and made the new bond which is the foundation of this suit. For more than fifteen years thereafter, armed with the security they had furnished, he held control of appellee's estate; made collections which he could not have made but for the acts of defendants in making this bond; instituted and conducted to successful termination suits which he could not have maintained but for the character of guardian with which the act of appellants had clothed him, and thus, as a direct result of the action of these appellants, appellee's funds were received and wasted by one who was, according to their own representation, "guardian of Robert Gillespie, a lunatic, of Noxubee county." Surely, on every principle of equity, those whose conduct has produced this result cannot now be heard to deny the fact which they have asserted in such a manner and with such a result. The principle of such estoppel is recognized by numerous decisions of this court, which hold that the sureties on an official bond are estopped from questioning, in an action on the bond, the validity of the principal's election or his legal right to the office. *State* v. *Cooper*, 53 Miss., 615; *State* v. *Harney*, 57 Miss., 863; *Taylor* v. *State*, 51 Miss., 79; *Schullherr* v. *State*, 68 Miss., 227. The principle of justice in which such an estoppel is founded is very obvious, and it is a principle which certainly applies as forcibly to cases of probate bonds as to official bonds. It is simply a recognition of the fact that the act of the sureties, in making the bond and therein representing that their principal is entitled to the office or position of trust which he claims, is the very act which enables him to commit the wrong against the state or individual for which the bond is intended to furnish indemnity; that without the assistance rendered by the sureties, in thus vouching for the official character, he would be unable to obtain control of the property and rights incident to the office, and, therefore, when he has by such assistance

actually obtained and enjoyed such property and rights, the sureties ought not to be heard to say, in answer to one injured by the misuse thereof, that their representations were false, and, although they intentionally enabled him to commit the wrong, they will cast the result of that wrong upon innocent persons who acted upon the faith of their representations. To deny the application of the doctrine of estoppel to guardians' bonds would result in throwing the loss occasioned by their misconduct upon either the innocent ward, whose incapacity rendered him helpless, or upon other innocent people who paid money to the guardian, because the act of the sureties, in clothing him with the insignia of rightful authority, induced them to believe that his authority was in fact rightful.

But the case of *Burrus* v. *Thomas*, 23 Miss., 550, holds directly that the doctrine of estoppel cannot be applied to a guardian's bond, and it is only in view of that adverse holding that we have been so careful to state the almost axiomatic principles which lead irresistibly to the application of the doctrine. If we examine the reasoning of that decision, it is apparent at once that the court wholly overlooked the true reasons on which the estoppel is based and the equitable nature of the estoppel sought to be applied. They evidently had in mind some sort of technical estoppel by deed, and in discussing it they considered not the results which had manifestly followed from the representations of the bond, but the nature of the instrument in which these representations were contained.

The reasoning in the case of *Burrus* v. *Thomas* is, upon investigation, seen to be worthless. The decision is unsupported by reason or authority. It is in conflict with the principles applied in other cases by this court, and in direct conflict with the unbroken course of authority elsewhere. It has been followed without discussion in *Boyd* v. *Swing*, 38 Miss., 182, and *Crum* v. *Wilson*, 61 Miss., 233, but, as neither of these cases attempts to support its doctrine by reasoning, they add little weight to the doctrine. So far as we have been able to

follow the holdings in other states, they are unanimous in support of the doctrine of estoppel as applied equally to probate and official bonds. The following cases all deal with probate bonds and apply the estoppel contended for. *Fridge* v. *State*, 3 Gill & J., 103; *Norton* v. *Miller*, 25 Ark., 108; *Iredel* v. *Barbee*, 9 Ired., 250; *Gray* v. *State*, 78 Ind., 68. We call especial attention to the case last cited, in which the court carefully discuss reason and authority applicable to the case, and especially discuss *Burrus* v. *Thomas*, showing that its doctrine is opposed to reason and authority. The leading text-book on the subject sustains the same view. Bigelow on Estoppel, p. 361; Murfree on Official Bonds, §§ 583, 672, 673, 674, 358. The courts of Maryland, Arkansas, North Carolina, Indiana, Massachusetts, Ohio, New York, Georgia, Maine and the federal courts all hold to the doctrine of estoppel in these cases. See *Fridge* v. *State*, 20 Am. Dec., 463; *Norton* v. *Miller*, 25 Ark., 108; *Iredel* v. *Barbee*, 9 Ired., 250; *Gray* v. *State*, 78 Ind., 68; *Cutler* v. *Dickinson*, 8 Pick., 386; *Shroyer* v. *Richmond*, 16 Ohio St., 455; *People* v. *Falconer*, 2 Sandf., 81; *Hines* v. *Mullins*, 25 Ga., 696; *Williamson* v. *Woodman*, 73 Me., 163; 17 Howard, 497.

The value of every case as a precedent, which is not founded on some statutory provision and has not become a rule of property, depends entirely upon the reasoning which supports it. If it is supported by bad logic, and the case has not become a rule of property, it should be disapproved. *Dodge* v. *Cole*, 97 Ill., 338; *Smith* v. *Henry*, 2 Eng., 207; *Frink* v. *Darst*, 14 Ill., 304; *Gully* v. *Dunlap*, 24 Miss., 410. The chief considerations in favor of a rigid adherence to former decisions is that of respect to rights of property which have been built up in reliance upon them. This is the foundation of the doctrine of *stare decisis*. Where this reason is absent, there is no basis for the application of that doctrine, except the mere desire for uniformity, which should certainly yield to any positive reason based upon considerations of justice and right. *Boone* v. *Bow-*

*ers*, 30 Miss., 246; *Garland* v. *Rowan*, 2 Smed. & M., 617; *Lanier* v. *State*, 57 Miss., 102; *Lombard* v. *Lombard*, 57 *Ib.*, 171. It cannot be said that defendants had a vested property right in the doctrine of *Burrus* v. *Thomas*, such as to justify them in executing the bond with the deliberate intention of avoiding liability thereon by appealing to that doctrine.

The objection to the exhibits filed with the deposition of some of the witnesses, because they are copies from books of account, cannot be sustained. The witnesses testify from memory to the fact of having had the collections on payments on behalf of Bardwell; they referred to their books, which had been correctly kept, to prove the details of transactions which had escaped their memory. The books were books of original entry, and had been kept by the witnesses. The original books were produced to the commissioner in the presence of counsel. The copies were made and certified by the commissioner, and both parties had every opportunity to examine the books themselves and the copies. In chancery cases, where the evidence is taken by depositions sometimes many days before the hearing, the requirement that the entire book containing an account testified about should be produced, not merely at the taking of the testimony, but at the hearing also, would be an impossible requirement. The parties have no right to compel any disinterested person whom they happen to summon as witness to surrender up to them or the court, books which are his private property, and which he may need in his business. The copies from such books are admitted as evidence. 2 Rice on Evidence, pp. 835, 898.

Argued orally by *J. S. Ham*, for the appellant, and by *J. W. Drake*, for the appellee.

WOODS, J., delivered the opinion of the court.

We find no error in the rulings on the evidence of the learned special chancellor who presided on the trial in the court below.

In each instance complained of by appellant, it clearly appears that the original books of entry were produced before the commissioner who took the depositions of the witnesses, and that correct copies of the entries were taken from such books. It would be so very inconvenient to make the books themselves exhibits to the answers to interrogatories as to render that course practically impossible; besides, the books were the private property of the witnesses, and it would be manifestly improper to require them to part with their books, when none of them are in anywise interested in the litigation. These remarks apply with equal force to the action of the court in receiving the copy of the receipt taken from the guardian by Messrs. Yerger & Percy. Mr. Yerger produced the original receipt before the commissioner, and, on his examination, furnished a correct copy of this receipt as the exhibit to his answer to one of the interrogatories. It is not contended that true copies were not given in each instance, but only that the books and the receipt themselves should have been made exhibits to the depositions. We are unable to see any good reason to support this contention of appellant's, and the reasons against it lie upon the surface, and two of them have already been adverted to by us.

We pretermit any reference to, or examination of, any other questions argued as to the action of the court in any matter antecedent to the final decree, and come at once to the vital inquiry in the case, viz.: Are the appellants estopped by the recitals of the bond which they signed as sureties, to deny the appointment as guardian of their principal ?

By their act in signing this bond of the guardian of the lunatic, he was enabled to take into his possession the entire estate of the lunatic, and for about fifteen years, by virtue of their voluntary act, he retained the exclusive control, management, and disposition of the estate and its income. Because of their suretyship on his bond, he, year by year, received the rents and profits of the lunatic's estate; he sold lands of the lunatic

and collected the purchase money, and he instituted proceedings in the courts of the country, on behalf of the lunatic, and carried to successful termination such litigation, and received as the fruits thereof hundreds of dollars. Now, when the guardian is dead, when the lunatic is in need of his own, and when large balances are found to be demandable from these sureties, they seek to prevent any recovery by the unhappy lunatic, whose funds have been wasted or misapplied by the guardian, on the ground of the invalidity of the guardian's appointment. By their bond and its recitals, upon every principle of equity, they are estopped to deny the validity of that appointment. The effort of the appellants is to show the invalidity of the guardian's appointment by disputing the recitals of their bond—the very instrument of their own making, by which the guardian took possession and control of the estate of the lunatic, and part of which has been wasted or misapplied and lost by the guardian, and for which it is now sought to hold these sureties liable—and this, by all right reason, and in all good conscience, they ought not and cannot be permitted to do.

Our only hesitation in making this declaration arises from the fact that forty-five years ago, in *Thomas* v. *Burrus*, 23 Miss., 550, it was held that a surety on a guardian's bond was not estopped by the recitals of his bond to deny the validity of his principal's appointment. This decision is not only clearly opposed to the overwhelming weight of authority, but is out of harmony with many other decisions of this court which deny to an officer and the sureties on his official bond the right to dispute the recitals of the officer's bond and question the validity of his appointment to office. We are utterly unable to conceive any reason, good or bad, for estopping a sheriff to dispute the recitals of the bond whereby he was enabled to seize his office, and yet refusing to recognize the doctrine of estoppel in similar cases where an administrator or guardian has incurred liability. In this case, where the lunatic is seeking to hold to liability the sureties on his guardian's bond, the real in-

quiry is, not was the guardian's appointment regular and valid, but is this bond—executed by these sureties, whereby their principal acquired authority to take, and in fact did take, into possession and control the lunatic's estate—without equitable or legal obligation to require the guardian, and those who bound themselves, to answer for his faithfulness? It affronts justice to assert that one may take into his hands the estate of another, under the forms of law, giving bond faithfully to administer it and account on the conclusion of his stewardship, and then successfully deny liability for the property thus in his hands, because of some legal infirmity in his appointment. We repeat, the question is not whether the appointment was valid, but whether the guardian and his sureties shall be bound by the terms of their bond? We have no doubt as to their liability.

So far as our research has extended, this case of *Thomas* v. *Burrus* is without the support of any other single decision, and should not longer be allowed to stand, if the doctrine of equitable estoppel is not to be shorn of its strength by the courts of the country. See Bigelow on Estoppel, 361, and references in note 3; Herman on Estoppel, 771, and cases cited in note 5; 8 Pick., 387; 73 Me., 163; 33 La. Ann., 732; 3 Gill & J., 103; 9 Ired., 250; 78 Ind., 68; 82 Ind., 126; 25 Ga., 696; 16 Ohio St., 455. No rule of property was created by *Thomas* v. *Burrus*, and we unsettle the property rights of no one, acquired in reliance upon that case. It is unsound and is overruled.

*Affirmed and remanded.*