VALLEY DRY GOODS CO. *v.* BUFORD

[75 South. 252, Division B.]

1. LIBEL AND SLANDER. *Sufficiency of complaint.*
In an action for slander a declaration alleging that defendant maliciously and unlawfully charged plaintiff with stealing a sum of money out of cash transactions in the store and that she was a liar, thick head and thief, and that defendant published such statements to a designated person was a sufficient allegation upon which to sustain an action for slander.

2. SAME.
In an action for slander it is sufficient to allege the words or synonymous words which constitute the slander.

3. SAME.

Accusing a person of being a thief is actionable *per se.*

4. LIBEL AND SLANDER. Pleadings. Variance.

There was no material variance between the allegation in a dec-
laration for slander that defendant falsely accused plaintiff of
being a thief and so told a designated person, and proof that
defendant's manager told such party that plaintiff had stolen ar-
ticles, signed a confession, and the case against her was prac-
tically settled.

5. LIBEL AND SLANDER. Privileged communications.

Defendant's statement that plaintiff had admitted her part in a
theft, is not privileged because made to the brother of another
claimed to have participated in the alleged theft.

6. LIBEL AND SLANDER. Instructions. "Uttered." "Published."

In an action for slander, an instruction, using the word "uttered"
instead of "published" was not reversible error since the terms
have practically the same legal significance.

7. TRIAL. Misconduct of counsel.

On the trial of an action for slander it was not reversible error for
counsel for plaintiff to say in his argument to the jury that he
believed the plaintiff was a truthful woman, believed every word
she said on the witness stand, and believed she was telling the
truth.

8. SAME.

It was not reversible error for counsel for plaintiff to comment
upon the absence of detectives employed by defendant in the
case, where it did not appear that their · presence could be se-
cured by plaintiff as well as by defendant.

9. SAME.

Nor for criticising defendant for charging women and not men with
theft nor for stating in reply to defendant's argument that plain-
tiff's failure to produce a witness, was caused by the child of
such witness being sick, though such assertion was unsupported
by the evidence.

APPEAL from the circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Action by Olive Buford, by next friend, against the
Valley Dry Good Company. From a judgment for plain-
tiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*McLaurin & Armistead* and *Brunini, Hirsch & Griffith,* for appellant.

Since writing our reply brief, we have had access in the state library to the Pennsylvania decisions. The first decision in this court was rendered in 1808, being *Kennedy* v. *Lowry,* 1 Binn. 393: "The reasons urged in support of the appeal are two: First, that the declaration contains five counts, in four of which it is alleged that the defendant spoke in substance the words following, viz., and then the words are inserted.

It is contended that the declaration is bad, because these counts do not set forth the very words which the defendant spoke, without which the court cannot judge whether they are actionable. It was formerly held, that unless a plaintiff proved the identical words laid in the declaration, he failed in supporting his action, but this strictness has long been relegated, and it is now sufficient, as is conceded by the defendant's counsel, if the plaintiff proves that the defendant spoke words substantially the same as those laid in the declaration."

In the case of *Youndt* v. *Youndt,* decided in 1825, 12 Serg. & R. 427, the supreme court of Pennsylvania says: "No particular words are laid in the count but the cause of action is stated generally, that the defendant charged the plaintiff with the crime of forgery. In support of this form of declaration, no adjudged cases are to be found in the English Books, but the two which have been cited, and these, together with a few precedents, in books of practice, are the whole foundation of the doctrine in this country. In *Nye* v. *Otis,* Justice PARKER, in delivering the judgment of the supreme court of Massachusetts, rests upon the *obiter dictum* of Lord HARDWICK in *Nelson* v. *Dickson,* without seeming to be at all aware that the latter was mistaken in supposing there was a precedent in Rastall for the form of declaration which he asserted to be proper. Now it is this *dictum* which is the root of all the misconception on the subject, for the short and imperfect note of the case *in ventris,* has not,

I believe, been considered as an authority anywhere. In *Ward* v. *Clark,* the precedents in Morgan, and in Richardson's practice in the King's Bench are treated with bare respect by the supreme court of New York, and the point is ruled against the weight of their authority. In opposition to these cases and precedents, resting, as they do, on questionable grounds, is found a source of decisions which I think incontestably establish a principle applicable as well to declarations as to indictments, that words, whether written or spoken, which become the subject of legal and animadversion, must be particularly specified. It is not, nor could it be pretended, that this defect is cured, by the verdict, for words, being the gist of every action of slander, to set forth no words is to set forth no title."

In the case of *Tipton* v. *Kahle,* 3 Watts, 90, rendered by the supreme court of Pennsylvania in 1834, the court states: "The meaning of the decision in *Kennedy* v. *Lowry,* 1 Binn. 393, that the substance of the words may be stated in the declaration, is, that the plaintiff need not set out every identical word by the defendant, but may give the purport of what was said by him. For example, words may have been laid to have been spoken in the second person, and proved in the third; redundant epithets may be omitted; synonymous terms may, in some cases, be substituted conveying the same ideas; but it is not permitted to drop altogether both the language and ideas uttered, and sum up all in one going charge, and then leave it to the jury to say whether the words proved amounted to that charge. Such a course would be to deprive the defendant of notice of the complaint against him; would perplex and embarass him in justifying or explaining the words he used, and would transfer from the court their duty to decide how far the words used were actionable. It would, in fine, derange the whole system of the law relative to the actions for slander.

114 Miss.—27

In the case of *Carvill* v. *Cochran,* 1 Philadelphia Reports 399, it is said: "The affidavit is slander, but does not set out the words. Besides that, it alleges a joint utterance by the defendants, who are husband and wife. It is unnecessary to refer to authorities to show that in both respects this affidvit is informal and defective."

In the case of *Lukehart* v. *Byerly,* 53 Pennsylvania State, 420, the supreme court of Pennsylvania says: "Now, although according to *Kennedy* v. *Lowry,* 1 Binn. 393, as explained in *Tipton* v. *Kahle,* 3 Watts, 93, it is sufficient to state the substance of words in the declaration—that is, the plaintiff need not set out every identical word spoken by the defendant, but may give the purport of what was said by him yet the imputation, whether in substance or *in haec verba* must be of a distinct criminal offense, or it is not slanderous *per se.* 'Taking apples' is not necessarily an indictable offense, nor even taking them without asking for them, for it may, be only trespass, whilst stealing apples is indictable. But when the slander charged is an alternative between trespass and larceny, an indictable offense is not necessarily imputed. And when with another disjunctive conjunction they are described as "words to that effect," the imputation becomes still more equivocal, for to 'that effect' may mean either to the effect of trespass or larceny—these being the antecedents, with nothing in the relative to distinguish what is meant. It is quite conceivable that the jury may have found under this count that the defendant only imputed a trespass to Byerly, and if so, the words were clearly not actionable."

In the case of *Wittmainer* v. *Krieg,* 13 Penn. County Court Reports, 64, rendered in June, 1892, the court say:

## STATEMENT.

The statement set forth that on or about November 13, 1890, the defendant had falsely circulated the report that the plaintiff had permitted his defendant's name to

a certain check for one thousand, five hundred and twenty-five dollars, upon the National Security Bank of Philadelphia, and that the plaintiff had obtained the money thereon from said bank and appropriated the same to his own use.

The defendant demurred to the statement and assigned the following reasons: That while the said statement charges that the defendant circulated a report to the injury of the plaintiff, it does not in any part thereof set out any slanderous words alleged to have been used or spoken by the defendant of and concerning the plaintiff.

### THE OPINION OF THE COURT.

Judgment for defendant on demurrer. It will be observed from these Pennsylvania decisions, which are cited in 25 Cyc. 448, in support of the exception to the general rule, that they are, in effect, authority for the general rule.

*Harry K. Murray, Hudson & McKay, Anderson, Vollor & Kelly* and *Jas. D. Thames,* for appellee.

The first proposition of law contended for by the appellant is that the declaration is not specific enough in its description of the slander. We submit that this contention is without merit. If the declaration was not sufficient in law, why was it not tested by a demurrer? While it was all sufficient, even under the strictest rules of pleading, it was even more sufficient under our wise and liberal statutes of pleading. Section 729 of the Code.

It is the commendable rule and practice of this court to give this wholesome statute a liberal construction and application. Section 738 of the Code says: "In actions for libel or slander the plaintiff may aver that the words or matter complained of were used in a defamatory sense, specifying such sense, without any prefatory averment to show how such words or matter were used in that sense; and such averment shall be put in issue by

the denial of the alleged libel or slander; and where the
words or matter set forth, with or without the alleged
meaning, show a cause of action, the declaration shall be
sufficient.''

This beneficent and remedial statute is most liberally
construed and applied by this court. The case of *Jones*
v. *Edwards,* 57 Miss. 28, has no application to the case
at bar, and does not support the text quoted by appellant
for 13 Ency. Pl. & Pr.   It was a case on the question of
variance between the proof and the declaration, and not
on the sufficiency of the declaration at all. Likewise was
the case of *Frit* v. *Williams,* 16 So. 359. The case of
*Furr* v. *Speed,* 74 Miss. 423, does not support appellant's
contention at all. It is exactly to the contrary, a fatal
boomerang for the appellant, because it expressly ap-
proves of the declaration in the case at bar. The declara-
tion in the case at bar is a general count in an action of
slander as, charging the plaintiff with stealing and pub-
lishing that charge of crime. The declaration first fully
and in minute detail avers that the appellant falsely
charged her with stealing twenty-five dollars and sent
her out to seek the money and then it further says:

''Plaintiff alleges that, on the 10th day of March, 1915,
the said defendant company, acting through its said
Manager Mulvihill and said agents, told and published
to Mr. Joe Palermo and others the said slanderous and
defamatory charges and false accusations made against
her.

''Told and published to Mr. Joe Palermo the said
slanderous and defamatory charges and false accusations
made against her,'' towit: among many others, that she
had stolen twenty-five dollars. Now listen to the con-
clusive words of the opinion in the *Furr-Speed* case
supra: ''A general count in an action for slander as,
charging the plaintiff with stealing, is good. *Nye* v. *Otis;*
5 Am. Dec. 79.''

In a very good book of practice, called Morgan's Vade
Mecum, it is said to be customary, where there is the

least doubt as to proving the identical words, to add a general count, as that the defendant charged the plaintiff with the crime of, etc. Now if such count were bad, no judgment could have been rendered on any counts joined with it, where the damages were general. It must therefore be presumed that such a form would long since have been rejected from the precedents if any legal objections lay to it.

In the action of *Nelson* v. *Dixie,* which was cited at the bar, Lord HARDWICKE said: In an action for words, you may either lay the particular words spoken, or set out the substance of them; and if the substance, as that the defendant charged the plaintiff with such or such a crime it is sufficient to prove the substance of the words.

Thus we see that our court has squarely and expressly lined up with the courts of Maine, Massachusetts, Pennsylvania, Georgia, and other authorities, texts and good common sense. The declaration in the case at bar is all sufficient from every view. *Furr* v. *Speed* and *Nye* v. *Otis, supra.*

## ALLEGED QUALIFIED PRIVILEGE—MALICE.

Appellant's next contention is that this is a case of a qualified privilege with malice absent. This position is wholly and hopelessly untenable squarely contrary to the great preponderance of the evidence and the verdict. *Railway Co.* v. *Brooks,* 69 Miss. 168; *Abraham* v. *Baldwin,* 10 L. R. A. (N. S.) 1051, 42 So. 591.

## PRIVILEGED OR NO "PUBLICATION?"

Appellant's point or theory in that part of its brief under the head of "Publication" is hazy or blurred. It is difficult to discern whether it is single-barrelled or double-barrelled; that is, whether its theory is that there was no publication or, if there was a publication, it was privileged. In order to discuss every possible theory we

shall assume that appellant intends a double-barrelled
shot, although the language of the appellant seems to
contend that there was no publication at all. Let us see
if the supposed double-barrelled shot will bear the test
of the law and the record. We submit that appellant's
powder was wet and only the cap "busted." And first
as to the theory of no publication at all. Appellant says
that Joe Palermo was Miss Palmer's agent and repre-
sentative in her trouble with the defendant. We do not
so understand the record. We, of course, readily con-
cede that Palermo went to defendant's store only in be-
half of Miss Palmer; but he did this purely as a volun-
teer as far as Miss Palmer was concerned, at the re-
quest of Tony Palmer and not at the instance or request
of Miss Palmer at all. Agency is a contractual relation
and we submit that its sound interpretation of the re-
cord will not sustain the proposition that Palermo was
the legal or chosen agent of Miss Palmer. The record
fails to show that she sent for him or in any way pro-
cured his efforts or presence.

Appellant next takes exception to Senator Murray's
argument where he referred to the absence of Morris and
Meinor, the detectives, and asks why these detectives
were not present as witnesses, or their depositions taken,
and ventured the opinion that their depositions would
have been interesting reading to the jury. Well, their ab-
sence was strange. But, when you consider what Senator
Murray said, it does not amount to a hill of beans, he did
not so much as insinuate in the remotest way what infer-
ence, if any, the jury could, or might draw, leaving them
absolutely without the vaguest suggestion as to whether
they could or might draw any inference at all, and if any,
whether favorable to plaintiff or defendant. As a matter
of fact Senator Murray's remarks in this regard rather
left the jury naturally and reasonably to infer that, if
the detectives had been present as witnesses, they would
have corroborated and supported Mr. Mulvihills testi-
mony and, therefore have given testimony favorable to

the defendant. Appellant says that: "This improper argument" (the same as Murray's) "has been expressly adjudicated to be reversible error by the supreme court of Mississippi in the case of *Railroad Co.* v. *Weinstein.* 99 Miss. 515, etc. Now the two cases are not similar in fact or principle. In the Weinstein case the exception was that "counsel for the plaintiff in closing the argument in this cause, said to the jury that the conductor at the time of the accident took the names of the persons present, of Vaiden and others, and that it failed to bring them to court, when it could issue them free passes and that the reason of this was because they thought they would testfy unfavorably for the defendant and would support the plaintiff. Now compare the above language with what Senator Murray said and note that there is an infinite difference.

Appellant takes exception to Mr. Kelly's argument where he submits to the jury why it was that Mulvihill and the detectives had selected these poor girls as the ones from whom they attempted to extort money. We submit that this was fair and proper argument.

At last we have finished with appellant's long list of "fatal errors." By its brief it would be made to appear that everything is error, except appellant's statement of the facts and of the "express holdings" of the courts. It is to be noted that appellant does not really want a new trial, but wants a judgment for the appellant rendered by this court. That is modest indeed.

ETHRIDGE, J., delivered the opinion of the court.

Olive Buford, the appellee, a minor, was employed to work in the store of the appellant, a dry goods establishment or department store. She alleged that on or about the 10th of March, 1915, she was called to the office of the manager, and by the manager of the company with some detectives who had been employed by the appellant she was asked as to her financial condition and the finan-

cial condition of her people, and was then and there
charged by the appellant with stealing a sum of money
out of a cash transaction in the store, saying that the
plaintiff was working as a partner in the theft with
Miss Palmer, a saleslady in the store. She alleges that
she protested her innocence, but was insulted and brow-
beaten and charged with larceny by the agents of the
said company acting on behalf of the company. She
alleges that the said agents continuously called and
charged her with being a liar, thick head, and thief, and
other disreputable things. She alleges that the defendant
and its manager then proceeded to use so-called third
degree methods to extort a confession of guilt of some
theft, and that she was asked to write a statement that
she had stolen money from the company to the amount
of one hundred dollars; that she refused to do so, and
the three men began abusing her and telling her that if
she did not write said statement that they would have
her handcuffed and taken by police officers through
the streets to the jail, and that this would disgrace her
and destroy her reputation in the whole community; that
she was coerced and intimidated into writing some state-
ment which she alleges she did not know the contents of,
that she was a minor and acted under duress in the fear
of being handcuffed, taken to jail, and disgraced, and
was forced to sign the said writing, but alleges that said
written statement was untrue and false, and that she
never would have written it but for fear, and that after
writing said statement she was told that she must get
twenty-five dollars at once and keep absolute silence
about the matter; that she was directed to go and get
the money and return, and if she did not return, she
would be arrested and placed in jail. Plaintiff further
alleges that on the 10th day of March, 1915, said de-
fendant company, acting through its manager, Mulvihill,
and said agents told and published to Joe Palermo and
others the said slanderous and defamatory charges and
false accusations made against her; that as a result of

said publication the news of the matter was quickly spread throughout the community. She sued for twenty thousand dollars damages. The defendant, the Valley Dry Goods Company, filed a plea of general issue and under the general issue gave notice that it proposed to prove under this plea of the general issue that the words that were in fact spoken were spoken by the employees of the defendant to the plaintiff in the discharge of the duty said employees had to perform for the defendant, and that the words spoken were spoken in good faith, without malice, in the belief that it came within the discharge of said duty, and, further, that the words in fact spoken to the plaintiff were spoken in good faith, without malice, to those who had an interest in the communication and in the protection of the defendant's interest as the employer of the plaintiff who had a right to know and act upon the facts stated and the information derived, or sought to be derived, from the actual language used, plaintiff at the time being a clerk in the defendant's store and in the defendant's employment. Wherefore they claim that it is a qualified privilege. These pleas were filed on the 26th day of January, and on the 28th of January motion was filed to require the plaintiff to make the allegations of the declaration more definite and specific, in that she be required to set forth the slanderous words *in haec verba,* or synonymous words, and to make her declaration more definite and specific, in that she be required to set forth by whom the slanderous words were uttered, time and place uttered, and to whom the communications were published. This motion was overruled by the court, and the cause proceeded to trial.

It appears from the evidence that the Valley Dry Goods Company employed Miss Buford as a cashier and package wrapper, and that in the department in which she worked was a Miss Palmer, who was employed as a saleslady. The company employed detectives to investigate their employees, and on the day Miss

Buford was examined, Miss Palmer was sent to the office and, it is claimed, made a confession to the theft, in which she implicated Miss Buford as her confederate or partner. After the examination and conversation with Miss Palmer and Miss Buford, each of which were conducted separately, Miss Palmer's brother came to the store and learned of the accusation against her, and he sent for Miss Palmer's brother-inlaw, Mr. Palermo. Mr. Palermo arrived and had an extended conversation with the manager of the company, in which conversation the manager related to Mr. Palermo that Miss Buford had stolen articles from the store and that she had made and signed a confession and had gone to procure the money to pay the amount that was stolen, and that the case against Miss Buford was practically settled. Mr. Palermo was not related to Miss Buford, and was not in any way acting for or on behalf of Miss Buford at the time of the conversation referred to. It appears that the detectives were employed on the basis of fifty dollars as compensation, and in addition were to have one-half of the sums secured from the employees. Miss Buford testified that she had not stolen anything from the company and was not in partnership or in any arrangement with Miss Palmer in taking goods or money from the store. Miss Palmer testified for the plaintiff that she did not implicate Miss Buford at all in the statement that she made to the manager of the Valley Dry Goods Company, and that Miss Buford had not stolen anything to her knowledge. Mr. Palermo testified for the plaintiff that Mr. Mulvihill, the manager, told him that Miss Buford had stolen twenty-five dollars and had signed a written confession, and that he was not, at the time of the said conversation or at any other time, the agent or representative of Miss Buford, and that the said statements were made to him voluntarily by the said manager of the appellant. There was a verdict for the plaintiff for five thousand dollars and the Valey Dry Goods Company appeals.

Several contentions are advanced as to why the case should be reversed. It is first contended that the declaration was insufficient, in that the exact words, or synonymous words, of the manager of the company in communicating to Mr. Palermo the statement with reference to the stealing are not set forth, and that the court erred in refusing to require that to be set out on motion. It is also insisted that the conversations above set forth were privileged and not actionable, on the theory that Miss Buford and Miss Palmer were employees of the company, and that they were made to Mr. Palermo as a representative of Miss Palmer, who had an interest in the matter. It is also alleged that some of the instructions were erroneous in using the word "uttered" instead of "published," and there is also complaint of certain statements made in argument by attorneys for the plaintiff and objected to and excepted to by the defendant.

We think that the statement in the declaration that the defendant unlawfully and maliciously charged plaintiff with stealing a sum of money out of a cash transaction in the store, and that the plaintiff was working as a partner in the theft with Miss Palmer, a saleslady in the store, and that she was charged with being a "liar," "thick head," and "thief" by the manager and agents of the company, and that these statements were published to Mr. Joe Palermo was a sufficient allegation in the declaration as to the publication, and that there is no material variance in the proof on this point. In our state it has always been sufficient to allege the words or synonymous words which constitute the slander. Under all the authorities, accusing a person of being a thief is actionable *per, se.* There was no demurrer to the sufficiency of the declaration, but a motion under 762 of the Code of 1906 to make the charges more specific. Looking at the record as a complete trial, we think the allegations of the pleading and the proof in the case substantially agree, and that

there was no error or prejudice which resulted to the defendant by overruling this motion. There was no other person relied on than Mr. Palermo to make a publication, and the declaration declared with sufficient certainay the time, person, and place to whom the publication was made.

We now come to the question of whether the communication to Mr. Palermo was privileged. As we see the matter, Mr. Palermo had no interest in or relation to Miss Buford, and inasmuch as charges had been preferred against Miss Palmer, and inasmuch as she had made the confession of her wrong upon which the defendant had investigated her, we think the company had no right to disclose to Mr. Palermo, under the circumstances in this record, the statements and written confession made by Miss Buford. We think there was no privilege in making this publication; that if there was a qualified privilege at all, under the circumstances in this record, the privilege was exceeded when the communication was made to Mr. Palermo.

We do not think there is any merit in the contention that the word "uttered," used in the instruction, was not equivalent to the word "published." The terms have practically the same legal significance, and the contention that the term "uttered" could be applied to the words used in the office in the conversation between Miss Buford and the manager and detectives, instead of when used to Mr. Palermo, is without merit. The manager of the defendant testified before the jury, denied the coercion claimed by Miss Buford, and presented fully defendant's side of the evidence. The detectives were not offered in evidence, and failed to testify in the case.

The instructions were liberal to the defendant, presenting fully and accurately the law of the case from the defendant's standpoint.

In the opening argument for the plaintiff Senator Murray, one of counsel for plaintiff, stated that he

believed Miss Buford was a truthful woman, believed every word she said on the witness stand, and believed she was telling the truth, which statements were objected to, and are complained of here. Whatever may be said of the propriety from an ethical standpoint of this language, we do not think that there is any error that would reverse the case. Counsel must be allowed wide latitude in their arguments. They are employed to present one side of the cause to the jury and must be allowed wide discretion as to methods in presenting their arguments. We assume the jury would expect counsel to believe his client whether the jury believed it or not. We do not think the jury would be misled by an expression of belief by an attorney in the case. Mr. Murray further referred to the absence of Mr. Morris and Mr. Meinor, the detectives employed, and asked why they were not present or their depositions taken, that it would have been interesting reading to the jury. It does not appear in the record where these people live, nor that the defendant was familiar with their residence or place of abode. It appears that they were not residents of the state, and it could hardly be said that these men employed by the company were equally available to the plaintiff as to the defendant, and for this reason there could be no error in the remark. The appellant also complains of arguments made by Mr. Kelly of counsel for the plaintiff. Mr. Kelly in argument says:

"Why was it that Mr. Mulvihill, manager of the defendant store, and the detectives, Morris and Meinor, had selected these poor girls as the ones from whom they attempted to extort money? Why did they not select some man able to look them in the face and talk back to them and act independently of them rather than to select these poor, helpless girls, who were unable to defend themselves from their assaults" which remarks were objected to. It is further complained that Mr. Kelly in his closing argument, responding to the

argument of the counsel for defendant that the plaintiff was not corroborated as to the money she returned being her sister's money, in which counsel for the defendant asked why was not the sister introduced to inform the jury whether or not it is true that she contributed in money to the plaintiff. Mr. Kelly in reply stated that he would tell the jury why the sister had not been introduced, and that was because she was off nursing her poor little sick baby, her own flesh and blood, back to life, and was not able to be present. It is contended that this is à statement of fact not in evidence, and constituted error. We fail to see any reversible error in the argument. Looking at the trial as a complete trial, we think that each side had its case fully and fairly presented, and that it is the function of the jury to determine the truth of the matters in issue and the amount of the verdict. Taking the jury's finding as believing the evidence of the plaintiff, we think the verdict was not excessive. The case is therefore affirmed.

*Affirmed.*