NEW ORLEANS GREAT NORTHERN R. CO. v. FRAZER.

(Division B. Nov. 3, 1930.)

[130 So. 493. No. 28865.]

408

Brady, Dean & Hobbs, of Brookhaven, and **Flowers, Brown, & Hester** and **J. N. Flowers**, all of Jackson, for appellant.

410

G. **Wood Magee**, of Monticello, for appellee.

Argued orally by **T. Rrady** and **J. N. Flowers**, for appellant, and by **G. Wood Magee**, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

H. D. Frazer was plaintiff in the court below, and filed suit against the New Orleans Great Northern Railroad Company in an action of slander charging in the first count of his declaration that a right of action had accrued to him because of the fact that J. I. Smith, while in the discharge of his duties as roadmaster, had wickedly and unlawfully, falsely and maliciously, charged and published, in the presence and hearing of various and sundry persons, that the plaintiff was a thief and had stolen funds and property of the appellant; and charging in the second count of the declaration that a right of action had accrued to him by reason of the fact that J. L. Gould, general superintendent, at the office of the company in the city of Bogalusa, Louisiana, in the presence and hearing of various and sundry persons, while Gould, superintendent of the aforesaid defendant, discharged his duties to the said appellant railroad company, while acting within the scope of his authority, unlawfully, falsely, and maliciously published and charged that the plaintiff in his opinion had been stealing from the said railroad company, and demanded judgment in damages in the sum of fifteen thousand dollars upon each of the said counts.

The defendant pleaded the general issue to each of the counts, and gave written notice under his plea of the general issue of affirmative matter in avoidance and of special matter in bar of appellee's cause of action, in

which it was alleged that the plaintiff was discharged by roadmaster J. I. Smith because of disobedience of the plaintiff to the orders of his superior officers, and because he was not successful in maintaining a crew of men for his work, and that he left camp without permission and was guilty of insubordination to his superiors, and had threatened to do personal violence to roadmaster J. I. Smith, and also that, after he had been discharged, the plaintiff had made complaint to J. L. Gould, superintendent of said railroad, and was advised by Gould that the company would arbitrate any cause of complaint he had to make under the contract between the appellant and its employees engaged in the maintenance of the right of way.

It appears from the plaintiff's version of the case that J. I. Smith, roadmaster, came to where the plaintiff, Frazer, was working his men in the service of the railroad company and stated to Frazer, the plaintiff, that after that day the railroad would not need his services; that on the next train a person would come to take his place as foreman of the crew, and to turn in his books and accounts to the company and turn the men over to the charge of the person named; that after paying off the men, it being a pay day, Smith and his companion left the crew and walked in the direction of Byram, where the crew maintained a camp; that this conversation with Smith took place about eleven o'clock and that plaintiff continued in charge of his men until twelve o'clock, and then started on their motor car to the camp. In route to the camp they overtook Smith and his companion, who were taken on the motor car and conducted to the camp. Within a few feet of the place where Smith and his companion and Frazer and the crew got off the motor car, Frazer asked Smith why he discharged him, or why he was discharging him, to which Smith replied, in the hearing of the men, "for stealing." That afternoon at one o'clock the assistant foreman took the men back to their work upon the track, while Frazer made up his time books

and accounts to turn in to the company, and quit work at four o'clock P. M. on that day in accordance with the direction of Smith.

The defendant's witnesses testified that, when Smith came to where Frazer was working the crew, he called him away from the crew and told him that after that day they would not need his services any longer, and that a person would be up on the next train to take his place as foreman. They stated that Frazer then said, in substance, they had better not fire him for stealing, or that Frazer asked him if he was firing him (Frazer) for stealing, and he answered that he was not; that if he wanted any further information to go to Mr. Gould's office at Bogalusa. Smith also testified that he directed him to turn the men over to the assistant foreman at twelve o'clock and to make up his books and turn them in. Plaintiff, Frazer, was asked on cross-examination as to conversation with Gould in the office of the railroad company at Bogalusa, Louisiana, the day following, and they elicited from him statements that Gould had said the railroad company had checked Frazer's books several times, and they thought he was stealing from the company, and also that Gould had offered to submit the matter to arbitration under a rule of the company which gave an employee that right. The defendant in his testimony also testified to the existence of such rule, and offered the rule in evidence; the pertinent part of the rule to this controversy reading as follows: "An employee disciplined or who feels unjustly treated shall upon making a written request to the immediate superior within ten days from date of advice, be given a fair and impartial hearing within ten (10) days thereafter and a decision will be rendered within ten (10) days after completion of hearing. Such employee may select a committee of employees to assist at the hearing. . . . An employee dissatisfied with a decision will have the right to appeal in succession up to and including the highest official designated by the management to handle such cases, if

notice of appeal is given the official rendering the decision within ten (10) days thereafter. The right of employee to be assisted by duly accredited representatives of the employee is hereby recognized. If the charge against the employee is not sustained, it shall be stricken from the record. If by reason of such unsustained charge, the employee has been removed from position held, reinstatement will be made and payment allowed for the assigned working hours actually lost, while out of the service of the railroad, at not less than the rate of pay of position formerly held or for the difference in rate of pay earned, if not in the service.''

Smith, the roadmaster, denied the statement testified to by the plaintiff and plaintiff's witnesses that he charged the plaintiff with stealing, or answered, at the time and place testified to by them, that Frazer was discharged for stealing. He and other witnesses testified that the cause of discharge was insubordination and for abusing his superior officers and for leaving camp without leave of the railroad company. It appeared from the testimony that Frazer's mother-in-law had been sick some time prior to the discharge, and that Frazer had been granted permission to go home any week-end during said illness, provided the assistant foreman was left in charge of the crew. Frazer's mother-in-law had died, and Smith's testimony was that the leave to be absent only existed during the illness and did not extend to other times; while Frazer's testimony was to the effect that he was given permission to go home any week-end, provided the assistant foreman was left in charge of the camp. He testified that usually most of the labor left the camp at the end of work Saturday and did not return until Monday morning, and that there were but few men in camp over Saturday night and Sunday, and that his leaving camp was by permission of Smith, and was not limited to the duration of his mother-in-law's illness. He further testified that Smith said that any time during such illness it became necessary for him to visit home he

could do so, provided the assistant foreman was left in charge of the crew. Frazer had been an employee of the road for many years prior to his discharge.

There was a verdict for the plaintiff for seven thousand five hundred dollars, from which this appeal is prosecuted.

Appellant, in its brief, states that it is evident from their statement of facts that five questions are presented to this court. They are:

I. Did the court err in admitting, over the appellant's objection, the testimony relative to the friendly feeling existing between assistant roadmaster Corban and roadmaster J. I. Smith, and the ill feeling existing between them and the appellee, on account of which this case should be reversed?

II. Did the court err in admitting the testimony, over the appellant's objection, of several witnesses who testified to the good reputation for honesty and integrity of the appellee at Varnado, Louisiana, and at Oma, Mississippi, and elsewhere in Mississippi, on account of which this case should be reversed?

III. Did the court err, on account of which this case should be reversed, in refusing to grant appellant's instructions Nos. 12 and 13, wherein the appellant sought to have the jury charged that appellee could not recover if the jury believed he delayed ascertaining the cause of his discharge until such time as he could ask J. I. Smith, roadmaster, why he was discharged, in the presence of other employees, with the purpose and intention of provoking a slanderous reply?

IV. Did the court err in refusing to grant the appellant a peremptory instruction for the reason that, at the time of the alleged publication of the slander for which suit was brought, roadmaster J. I. Smith was not acting within the scope of his employment and in the furtherance of his master's business, and should the judgment of the

court below be reversed and a judgment entered for the appellant in this court?

V. Did the court err in refusing to grant the appellant a peremptory instruction for the reason that the alleged publication of the slander was privileged, and should the judgment of the court below be reversed and a judgment entered for the appellant in this court?

Under the first of these propositions the plaintiff had testified that the assistant roadmaster, Corban, had been unfriendly to him, and that they had had a difficulty on previous occasions in which the plaintiff had threatened Corban with physical violence; at the time referred to, the said Corban was not assistant roadmaster, but was foreman of a section crew. It was shown in the evidence that Smith and Corban were friendly, but the court ruled out all of the evidence with reference to the relation between Corban and the plaintiff. We do not think there is any reversible error on this proposition. It appeared that plaintiff did not think he could get along with Corban as assistant roadmaster, and the relationship was offered for the purpose of showing probable malice. The question was limited to the relation of Smith and Frazer, and we find no error in regard to the matter that would warrant a reversal of the case.

On the second proposition as to the good reputation of the plaintiff, the court admitted the evidence, over objection, of the plaintiff's reputation for honesty and integrity in the community in which he lived and among the people that knew him prior to the alleged slanderous remark. The general rule, as stated in the books, is that ordinarily the evidence of plaintiff's good character in slander and libel is not admissible until it has been attacked by the defendant. A minority of the courts hold that, if the gist of the action is for damage to character, the character is an issue, and evidence of good reputation as to the traits involved is admissible in the first instance. In 37 C. J., p. 58, section 422, it is said: "While

some cases have allowed plaintiff, in the first instance, to introduce evidence to show his general character to be good, the general rule supports the view that in an action for defamation, as in other civil actions, the good character of plaintiff is presumed, and until it is attacked by defendant, no evidence should be introduced on behalf of plaintiff to show that his character or reputation is good. If plaintiff's character is attacked, and put in issue, evidence of his reputation or character is admissible, regardless of the forms of the pleadings." At page 60, 37 C. J., section 423, under the heading "In aggravation of damages," it is said: "It has been held that plaintiff may produce, in chief, evidence of good character in aggravation of damages, although there is no plea of justification or any evidence offered by defendant attacking plaintiff's character; but that such evidence is competent only for the purpose of increasing the damages, and that the jury should be so instructed. It also has been held that if justification is pleaded, plaintiff may show his good reputation in aggravation of damages." We do not think the admission of this evidence is reversible error, because the court will not reverse the trial court for admitting in evidence as affirmative proof matters which the law presumes in the absence of proof. The allegation in the case before us involves a charge of malice, or malicious defamation, and, in awarding compensation in aggravation of actual damages, or in the nature of punitive damages, we think the evidence of good character may be offered.

On the third proposition above stated the appellant asked the following instructions: "No. 12. The court instructs the jury for the defendant that if they believe the plaintiff was discharged in the absence of employees and he intentionally and purposely delayed ascertaining the cause of his discharge until such time as he could ask J. I. Smith, roadmaster of the defendant, why he was discharged in the presence of the employees of the defendant, with the purpose and intention of provoking a slanderous

reply and thereafter claim against the defendant the cause of action upon which he was sued, then the plaintiff cannot recover. No. 13. The court instructs the jury for the defendant that if they believe the plaintiff asked J. I. Smith, roadmaster of the defendant, why he fired him or why he discharged him for the purpose of eliciting from the said J. I. Smith a slanderous remark or a slanderous statement upon which to predicate a suit, then he cannot recover.'' Both of these instructions were refused. In our opinion, the facts do not warrant a submission of this proposition to the jury. There is no evidence from which it can be logically inferred that Frazer made the inquiry, or delayed making it until the time it was made, with any view of eliciting a slanderous reply, or that he was seeking an opportunity to bring a suit against the company for his discharge, or that he anticipated that he would be told in reply thereto that he was discharged for stealing. The instructions were not applicable to the evidence contained in the record and would have tended to mislead the jury in the consideration of the case.

The fourth proposition above stated, Did the court err, in refusing to grant the appellant a peremptory instruction for the reason that, at the time of the alleged publication of the slander for which suit was brought, roadmaster J. I. Smith was not acting within the scope of his employment and in the furtherance of his master's business, and should the judgment of the court below be reversed and a judgment entered for the appellant in this court? It is the contention of the appellant that Smith, at the time the statement was testified to by the plaintiff's witnesses, was not acting for the master or within the scope of the master's business, that the discharge was a completed affair, and that any statement 'Smith may have made at said time was not attributable to the master, and that Smith was not acting for and in the place of his master at the time of making the statement. According to the plaintiff's testimony, the dis-

charge had not been completed, but was to take effect at four o'clock in the afternoon of that day, and that Frazer was to remain in charge of the crew until afternoon and was then to continue in the service of the master during the afternoon in making up his accounts and statements pertaining to his business for the master. According to the defendant, Frazer was to be in charge of the men until noon, and was then to turn them over to the assistant foreman and make up his book account. Smith represented the master in employing and discharging the servants of the master so far as Frazer and his crew were concerned. The employment had not ceased, Smith still had it in his power to revoke the discharge and retain Frazer, had he desired to do so. The question asked Smith by Frazer at the noon hour, as to why he was discharged, was entirely about the master's business and about which Smith represented the master. It may be that, had Smith then stated the reasons, as they were testified to at the trial, the difference could have been smoothed out and Frazer retained in his employment. Had Smith then replied that Frazer had left his employment without permission of Smith, their misunderstanding about the matter might have been adjusted, or whatever may have been the cause of the discharge, under the theory that the defendant tried its case, and the reasons it gave for the discharge, might have been adjusted and accommodated. It may have been the very object of Frazer, in making the inquiry, to see if he could not do something to retain himself in his employment, or retain his job, and, if the answer had then been upon the basis upon which the defendant contended at the trial, it might have been satisfactorily adjusted; but it is evident that, when he was told he was discharged for stealing, that was a charge or reason which could not be easily discussed or settled by friendly discussion. We think the statement was a part of the res gestae pertaining to the discharge, and that the defendant was not entitled to a peremptory instruction upon the ground that its servant

was not acting within the scope of his employment and about the business of the master.

The fifth proposition, Did the court err in refusing to grant the appellant a peremptory instruction for the reason that the alleged publication of the slander was privileged, and should the judgment of the court below be reversed and a judgment entered for the appellant in this court? Ordinarily an answer made in response to an inquiry is not actionable if it is made without malice and in good faith and is a truthful answer. That the answer disclosed to the plaintiff at that time was not truthful is attested by the testimony of the defendant's witnesses that Frazer was not discharged for stealing, but was discharged for other reasons. It does not defend upon the ground that its answer was truthful and made in good faith in response to the inquiry. If the plaintiff, Frazer, was a person of good character and had not, in fact, been stealing or doing equivocal acts, he could not have anticipated this charge of theft reasonably; and it is clear, we think, that he did not anticipate such an answer would be made to his question. Under the rules of the company, above referred to, Frazer had a right to arbitrate with the company the rightfulness of his discharge, and to be reinstated should the arbitration find in his favor that he was wrongfully discharged. This right has an important bearing in this lawsuit. It may serve to explain why the inquiry was made, and that it was made in good faith, and that the company, through its agent, in making the reply it did make, as found by the jury, falsely stated he was discharged for stealing, and that this statement was maliciously made. A malicious slander is not privileged. A statement made in response to an inquiry as to why a party was discharged, if truthfully made and in good faith, is privileged, but no person is entitled to shield himself under the doctrine or claim of privilege for the purpose of uttering defamation made maliciously or with evil motive.

There is some complaint that there is a variation between the allegation and the proof, and that the answer as disclosed in the evidence does not correspond to the statements contained in the pleadings. We think this and several other questions argued are settled contrary to appellant's contention in Valley Dry Goods Co. v. Buford, 114 Miss. 414, 75 So. 252, in which case a similar contention was made, and the court held that there was no material variation between the allegation that the defendant falsely accused plaintiff of being a thief and so told a designated person, and proof that defendant recently told such person had stolen articles and signed a confession, and the case against her was practically settled; it was also settled that accusing a person of being a thief is actionable per se.

It is next contended that the verdict is excessive. The testimony in the case before us shows that the plaintiff enjoyed a good reputation for honesty and integrity prior to the alleged slander, and that he still enjoyed that good reputation in the communities in which he was known, and it does appear affirmatively that his reputation was not destroyed by the alleged slander, and that no serious damage was done to him among the people who knew him intimately. There must be quite a difference between the amount of damages a person is entitled to recover for slander that is not effective in destroying or seriously affecting his reputation, and slander that does seriously and permanently injure or destroy that reputation. The reduction of verdicts made by jurors after a full trial of all the facts is a delicate and serious matter; yet the courts are under duty to see that jurors are not swayed from their duties by passion and prejudice. The court must see that the trial is a fair one, and that the damages awarded are not beyond the bounds of reason or beyond the pale where reasonable minds might differ as to amount. It is a difficult and delicate duty for the court to say just when, and to what extent, a verdict is excessive. As long as the verdict of the jury is one, on the facts in

424

the particular case, about which there might be differences of opinion among fair, honest, and reasonable men, as to amount, their verdict should stand; but, when it is apparent that the jury have gone beyond this limit and have awarded damages largely in excess of what is just, fair, and reasonable, the court must assert its prerogative and exercise the discretion vested in it by law to see that it is not greatly excessive. After a full and fair consideration of the evidence contained in the record, and in the light of the testimony of the plaintiff's witnesses that his reputation was not destroyed or greatly damaged by the slander uttered, we are constrained to hold that the large verdict here rendered is excessive.

We have reached the conclusion that the verdict should be reduced to one-half of the amount rendered; and, if the plaintiff will enter a remittitur within ten days from the rendition of this opinion reducing the judgment to three thousand seven hundred and fifty dollars, it will be affirmed with remittitur; if not, the cause will be reversed and be remanded to the court for a new trial.

Affirmed, with remittitur.