LOUISIANA OIL CORPORATION *et al. v.* RENNO.

(Division B.   Dec. 3, 1934.   Suggestion of Error Overruled Jan. 14, 1935.)

[157 So. 705.   No. 31421.]

610

Chalmers Potter, Walter W. Capers and Green, Green & Jackson, all of Jackson, and H. C. Walker, Jr., of Shreveport, La., for appellants.

Lotterhos & Travis, of Jackson, for appellee.

Argued orally by **Marcellus C. Green**, for appellant, and by **Fred Lotterhos**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the circuit court of Hinds county against appellants, Louisiana Oil Corporation and J. E. Bowman, to recover damages for an alleged slander uttered by Bowman, which appellee claims was done in the course of his employment as agent of the oil company. The trial resulted in a verdict and judgment in the sum of five thousand dollars against both appellants. From that judgment they prosecute this appeal.

These are the questions in the case: Whether or not appellant Bowman was an independent contractor, or the agent of the oil company acting within the scope of his authority, at the time of the utterance by him of the alleged slander. Whether or not the statement, if made, was a qualified privilege, and, if a qualified privilege, whether it was uttered in good faith. Whether or

not the court erred in failing to exclude certain evidence offered by appellee, and whether or not the court erred in refusing certain instructions requested by appellants.

Appellant oil company was engaged in the Jackson territory in this state, as well as elsewhere in the state, in the sale and distribution of oil, gasoline, and other petroleum products. In the Jackson territory it owned or controlled by lease something like twenty service stations where its products were distributed by retail. It had a bulk sales station in the city of Jackson where its products were kept in bulk for distribution to the various service stations. Bowman was in the employ of the company; he was in charge of the bulk sales station, and had the supervision and control of the distribution of the products to the service stations. The respective rights and obligations of Bowman and the oil company were fixed by a written contract, the pertinent provisions of which are substantially as follows: It expressly names Bowman as the agent of the oil company in more than one place; it provides that he shall devote his entire time and energy to the sale of the oil company's products; that the oil company shall own or control by lease all the service stations; that all delivery equipment, including trucks, carrying cans, hose, funnels, etc., shall be furnished by Bowman, but shall be satisfactory to the oil company; that the oil company shall sell Bowman any of such equipment when needed at actual cost, plus ten per cent for handling charge and plus freight; that Bowman shall pay all operating expenses of the business in his territory; that he shall maintain an adequate and competent force and pay their salaries and expenses, but such force shall meet the approval of the oil company; that at the termination of the contract the oil company reserves the right to purchase from Bowman all the equipment, including trucks, carrying cans, hose, funnels, etc., at a price to be agreed upon; that Bowman shall have painted at least once a year, and more often,

if the oil company requires it, all equipment used in the distribution and delivery of the products, for which the oil company agrees to furnish the necessary amount of paint, Bowman to furnish the labor for the painting which is to be done according to specifications of the oil company; that the price of all products handled by Bowman shall be determined by the oil company; that all sales shall be in the name of the oil company, and any credit sales shall be first approved by its credit department, Bowman to be responsible for the price of any credit sales not so approved; that Bowman's compensation shall be a commission on the sale of the products.

Under this contract, was Bowman the agent of the oil company, or an independent contractor? We are of opinion that under the authority of Gulf Refining Company v. Nations, 167 Miss. 315, 145 So. 327, and Texas Company v. Pete Mills, 156 So. 866, decided October 15, 1934, 171 Miss. 231, he was the agent of the oil company. The oil company owned the bulk sales plant and all the service stations, and all the products handled. Bowman furnished the necessary equipment for the delivery of the products, employed the force, including the service station attendants, and paid their salaries, but the entire force employed by him had to meet the approval of the oil company. Bowman's compensation was a commission. Under the contract he had little, if any, independence. The business and the manner by which it was carried on was the oil company's and not his. We think the further statement of the case in the following paragraph demonstrates that, when Bowman used the language in question, he was acting within the scope of his employment, and thereby bound the oil company as well as himself.

According to appellee's evidence, Bowman said, in the presence of probably twenty employees of the oil company, that he (appellee) had been discharged as keeper

of one of the oil company's service stations in the Jackson territory because he was a bootlegger, meaning that he was engaged in the sale of intoxicating liquors in violation of both state and federal laws. Both of the appellants contend that this statement was made under circumstances and conditions which made it a qualified privilege—privileged if made without malice and in good faith. The necessary facts to develop this question are as follows: From time to time Bowman held meetings of all the service station keepers in the bulk sales station, and at such meetings the truck drivers attended. On the occasion in question there were present at the meeting station keepers and truck drivers and one Condon, who was the oil company's state sales manager. At this meeting, as was the custom, the business in hand was discussed. Bowman presided and called on each service station keeper for a report of his sales, the gallonage, and other matters connected with his station. They made their reports, and ways and means of increasing the business were discussed. Appellee had been one of the station keepers and had been discharged by Bowman. At the time of this meeting, Murphy was in charge of appellee's former station. In his report he stated, in substance, that, if his calls for intoxicating liquors were added to his calls for gasoline and other products handled at his station, his gallonage would be larger. Thereupon Bowman stated that appellee was a bootlegger, and had been discharged for that reason. This statement by Bowman was amply proven by witnesses for appellee who were present. Bowman and other witnesses on behalf of appellants denied outright that the statement, or anything akin thereto, was made.

A communication made in good faith and on a subject-matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which

without this privilege would be slanderous, provided the statement is made without malice and in good faith. 17 R. C. L. 341; New Orleans Great Northern R. Co. v. Frazer, 158 Miss. 407, 130 So. 493; Newell on Slander and Libel (4 Ed.), sec. 341.

There are certain occasions on which a man is entitled to state what he believes to be the truth about another, and in doing so public policy requires that he shall be protected, provided he makes the statement honestly and not for any indirect or wrong motive. Such occasions are called occasions of qualified privilege, for the reason that the protection is not absolute, but depends entirely upon the honesty of purpose with which the statement is made. Among such statements is one made on a subject-matter in which the person making it, and the person to whom it is made, have a legitimate common interest. Gatley Libel and Slander, p. 193. The underlying principle is public policy. The question of privilege is for the court on a given state of facts; if the facts are undisputed, the court decides the question and instructs the jury peremptorily; if the facts are disputed, the court submits the question to the jury to determine whether the necessary facts existed. Newell on Slander and Libel (4 Ed.), secs. 345, 346 and 395.

We are of opinion that under the law the undisputed facts show that Bowman's statement was qualifiedly privileged. Whether the service station keepers should have abstained from the illicit sale of intoxicating liquors in their stations was properly a matter for consideration and discussion at the meeting. It pertained to the success of the business in hand and concerned all present. At appellants' request the court should have instructed the jury peremptorily to that effect. The court evidently treated the occasion as one not privileged, because it refused instructions requested by appellants to submit that question to the jury.

The occasion being privileged, the question then is

whether or not the statement was made without malice and in good faith. Where is the burden of proof on this question? The presumption of good faith goes with the privilege; therefore, the burden of showing bad faith is on the plaintiff. Newell on Slander and Libel (4 Ed.), sec. 346, and cases in the note. If the communication has been made in good faith, fairly, impartially, without exaggeration or the introduction of irrelevant defamatory matter, the communication is privileged. It must be remembered, however, that, although the occasion be privileged, it is not every communication that is made on such occasion that is privileged. A communication which goes beyond the occasion exceeds the privilege. The statement must be sincerely made, but this alone will not justify the person making it; there must be facts and circumstances which reasonably impose on him the duty to make the statement. Id., secs. 394 and 402.

Was there sufficient evidence to go to the jury on the issue of bad faith? Bowman testified, and so did other witnesses for the appellants, that no such statement, or anything like it, was made at the meeting. The verdict of the jury, of course, meant that the statement was in fact made. There was no attempt on the part of appellants to show the probable truth of the statement, if made. We think it logically follows that Bowman's denial of the statement under those conditions tended to prove his bad faith, if such statement was made. It is true that appellee did not otherwise prove the bad faith, but it tended to prove itself, so to speak. To illustrate: On a privileged occasion A asks B if C is an honest man, and B answers that he is a thief; C sues B for slander, B denies making the statement, and makes no attempt to justify it, if made. May not it be reasonably inferred that, if the statement was made, it was made in bad faith? We think so. And, add to that what Bowman stated to Murphy on a subsequent occasion, which was also denied by Bowman. Murphy, as shown above, was

one of the station keepers. Bowman was talking to him about the illicit sale of intoxicating liquors in the stations; he stated that he was going to see that appellee did not get employment with any of the major oil companies. Eagerness to prevent a former employee from obtaining other employment elsewhere has the appearance of malice. Newell on Slander and Libel (4 Ed.), sec. 407. On the same occasion Bowman stated to Murphy that appellee was a bootlegger, and on another occasion he made the same statement to Starr, another witness, which he also denied. Starr, at the time, was one of the station keepers. We think, for the reasons already stated, that these communications to both Murphy and Starr were qualifiedly privileged; that they were privileged to the same extent as the statement made by Bowman at 'the meeting in the bulk sales plant. The witnesses were discussing the business of their principal, how it should be conducted, and all were interested in that business. Those statements to Murphy and Starr were, therefore, just as much binding on the oil company as they were on Bowman. Appellants objected to the admission of their testimony. For the reasons stated, we think it was competent.

The controlling principles of law were not given the jury in the instructions. Without taking up and considering the given and refused instructions, it will be apparent at once from what we have said that that is true. On this record the only questions for the jury were whether or not the statement was made at the meeting, and, if made, whether made in good faith, and the amount of damages to be awarded if made and made in bad faith.

Reversed and remanded.