GREAT ATLANTIC & PACIFIC TEA CO. *et al. v.* MAJURE.

(Division B. April 20, 1936.)

[167 So. 637. No. 32214.]

(Division B. June 1, 1936. Suggestion of Error of Great Atlantic & Pacific Tea Co. Overruled July 3, 1936; Suggestion of Error of G. E. Hart Overruled Sept. 28, 1936.)

[168 So. 468. No. 32214.]

Hugh V. Wall, of Brookhaven, and J. B. Hillman, of Philadelphia, for appellant.

**Butler & Snow,** of Jackson, for appellant.

Reily & Parker, of Meridian, and Richardson & Sanford, of Philadelphia, for appellee.

Reily & Parker, of Meridian, for appellee.

Earl Richardson, of Philadelphia, for appellee.

Reily & Parker, of Meridian, and **Watkins & Eager,** of Jackson, for appellee.

Argued orally by **Hugh V. Wall** and **George Butler,** for appellant, and by **Marion W. Reily,** and **W. H. Watkins, Sr.,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant company operates a large number of grocery stores throughout the country. One of these is at Philadelphia in this state. Appellant Hart was the manager of this store. Appellee was a clerk therein, and had been for several months. The superior or district officers of the company were claiming that there was a shortage in this particular store. On or about November 18, 1934, appellee was discharged, and about ten days or two weeks later four parties went to the store and asked why appellee was discharged, and the manager replied that there was a shortage in the store and that appellee had to go on account of the shortage.

Appellee sued for slander, and, on the trial of the case, the local and district managers both testified ex-

onerating appellee from any responsibility concerning the alleged shortage; the manager denied ever having made any such charge; and it is argued that if such charge were made, it was not slanderous per se and was without malice, all the parties being entirely friendly. Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade, or business are slanderous per se. Farley v. Bufkin, 159 Miss. 350, 355, 132 So. 86. A clerk in a mercantile store is within this definition; and when only one clerk in a particular store has been discharged, a statement that he was discharged because of a shortage in the store is equivalent to an assertion that he was the particular person responsible for the shortage. And the shortage need not be one involving a criminal offense, as appellant has so earnestly argued. It is sufficient when a profession, trade, or business is concerned that the charge imports an unfitness in capacity. And when a party denies having uttered the slander, proof that he did, when taken in connection with the fact that no effort is made to prove the truth of the utterance, is sufficient evidence of malice to go to the jury. Louisiana Oil Corp. v. Renno, 173 Miss. 609, 157 So. 705, 98 A. L. R. 1296. And particularly so in this case, because the jury was justified in finding from the evidence that the shortage, not at any time large, was that of the manager himself and that he was making the charge against appellee to distract attention from himself. The liability of the manager personally is entirely clear, and the judgment as to him is affirmed.

After mature consideration, we have concluded that the appellant tea company is not liable. Taking the proof in behalf of appellee, plaintiff, as entirely true, as is proper because of the verdict, this proof is that the discharge of appellee had occurred about ten days or two weeks before the uttering of the alleged slander, and that appellee's discharge had for and throughout said twelve days been a completed and closed incident, so

far as Hart's legitimate official duties thereinabout were concerned. Strickland v. S. H. Kress & Co., 183 N. C. 534, 112 S. E. 30; and see, also, Courtney v. Am. R. Exp. Co., 120 S. C. 511, 113 S. E. 332, 24 A. L. R. 128. The alleged slander was not so closely connected with the discharge in point of time that it may be said to be "a part of the res gestæ pertaining to the discharge." New Orleans Great Northern Railroad Co. v. Frazer, 158 Miss. 407, 421, 130 So. 493, 497; Scott-Burr Stores v. Edgar (Miss.), 165 So. 623.

So far as the record shows, appellee had no contract with the appellant company for any fixed period or term of employment. It was therefore within the lawful right of appellant company to discharge appellee at any time it chose to do so, and for any reason it might think sufficient, or even for no reason at all. And having that lawful right, it was none of the lawful business of any third person as to why the discharge was made, and, consequently, was of a matter about which appellant company owed no duty whatever to give any information to any third person.

And since the incident of discharge was of a matter which the corporation was under no duty, and had no occasion in the furtherance of its business, to discuss with third persons, it must logically follow that any agent or employee of the corporation, in discussing it with any third person, was acting outside of and beyond any duties owed by the corporation and beyond that which was in the furtherance of its business, and therefore was beyond and outside of the duties which the employee or agent owed to the corporation to do, and for the same reason was outside of and beyond any duties which the employee or agent was impliedly authorized to perform for the corporation.

It must follow upon equal legal logic that when the agent, Hart, discussed this matter with outside parties, his actions were purely voluntary on his part, and had nothing actually to do with his employment, and whether

his statements were false or slanderous did not in a legal sense concern the master. In other words, the agent was not about the master's business when he uttered the words imputed to him. See Moore Stave Co. v. Wells, 111 Miss. 796, 797, 72 So. 228. And we are leaving aside that the manager was perhaps serving his own personal interests, as we have heretofore mentioned. The alleged slander was, so far as the corporation was concerned, as if appellee had never been an employee of appellant company, and had never had any business relations with it whatever; and certainly none will contend that because a slander is uttered by a store manager against a particular person having no connection with the business of the corporation, the company is liable. The rule of respondeat superior has no such universal application as that. The case is not nearly so strong against the principal as Craft v. Magnolia Stores, 161 Miss. 756, 138 So. 405, or Martin Bros. v. Murphree, 132 Miss. 509, 96 So. 691.

We are, of course, not holding that merely because an employee has been discharged, and the discharge within itself is a completed event, this will render any slander subsequently uttered by agents of the corporation a purely personal matter of the agent, with no responsibility on the part of the principal, especially when the slander is by a general corporate agent; but a case to come within the rule is when the slander is nevertheless uttered in the furtherance of the master's business, and within the scope of the agent's duties and authority at the time, as is illustrated by the recent case, La. Oil Corp. v. Renno, 173 Miss. 609, 157 So. 705, 98 A. L. R. 1296; but there are no facts here substantially sufficient to bring this case within the rule applied in the Renno Case, and those of similar principle.

It is urged that the jury was authorized under the evidence to infer that the slander was uttered in the furtherance of the business of the master, in that the slander was done to prevent appellee from obtaining employ-

ment in a competitive store and from taking away customers to the other store. An argument along this line in its substantial aspects was made in Hand v. Ins. Co. (Miss.), 165 So. 616, but was held by the court not to be sufficient. And it is said that if the friends of appellee were not furnished an, explanation for his discharge, they would, in the absence of such explanation, go elsewhere to trade, and that it was for this reason that the slander was uttered. We cannot conceive how a jury of reasonable men would suppose that a slander uttered against a friend of customers would be thought by a sensible person to be a means of holding those friends as customers; and, besides, so far as concerns the argument last stated, the principal ought not to be held to an anticipation of an action on the part of an agent so devoid of common sense as that would be. Compare Hand v. Ins. Co., supra.

Affirmed in part, and in part reversed.

**Ethridge, P. J.**, delivered the opinion of the court on Motion to Correct Judgment.

On a former day of this term of court, we considered and decided the above case on the record sent up from the court below, and held that the Great Atlantic & Pacific Tea Company was not liable for the injury complained of, but that G. E. Hart, the other defendant and appellant on the record, was liable, and that the appeal bond given was liable for the judgment rendered, together with the ordinary consequences of costs of the appeal and damages. 167 So. 637. After the decision mentioned was announced, but before the judgment was entered on the minutes of the court, the attorneys representing the appellant filed affidavits with the clerk of this court stating that the defendant G. E. Hart had not appealed and had not authorized them to appeal in his behalf, and an affidavit was filed as from G. E. Hart to like effect. These affidavits, which were filed after the decision of the case, also showed that the defendant G.

E. Hart had been represented by attorneys representing the Great Atlantic & Pacific Tea Company in the trial of this cause in the court below, but without compensation, and that they had been authorized to represent said Hart in the court below.

A judgment was rendered in the court below against the tea company and G. E. Hart, in favor of E. C. Majure, on October 30, 1935.

Motions for a new trial were separately filed by the tea company and G. E. Hart, which motions were signed by the same attorneys. Separate orders were entered as to each of the defendants overruling the motions, in which the court allowed an appeal with supersedeas.

On November 1, 1935, after the rendition of the judgment on October 30th, and during the same term of court, a joint petition for appeal was filed by the tea company and G. E. Hart, the same being signed by the attorneys who had represented the defendants in the court below.

A notice to the stenographer in writing signed by one of the attorneys representing both defendants in the court below, and who represents the appellant here, was given on behalf of G. E. Hart, stating that an appeal was desired by G. E. Hart. which notice was filed with the clerk. A separate notice to the stenographer was filed by the attorneys on behalf of the Great Atlantic & Pacific Tea Company et al.

On November 6, 1935, a joint appeal bond was signed by the tea company, with the National Surety Company, reading as follows:

"We, the Great Atlantic & Pacific Tea Company, a corporation, and G. E. Hart, an individual, principals, hereby agree and bind ourselves to pay to E. C. Majure the sum of $11,000.00, the payment of which we bind ourselves, our executors and our assigns firmly by these presents. The conditions of the foregoing obligation are such that the above named E. C. Majure sued the above named principals in the circuit court of Neshoba Coun-

ty for slander, and obtained a verdict against them for the sum of $5,500.00, and the above named principals, the defendants in said cause, have appealed said cause to the supreme court of the State of Mississippi. Now, therefore, if the above named principals, the Great Atlantic & Pacific Tea Company and G. E. Hart, shall well and truly abide by the decision of the supreme court of State of Mississipi, and shall pay any and all obligations as directed by the said supreme court, and shall satisfy any judgment rendered by the supreme court, then and in that event, this obligation shall be null and void, otherwise, it will remain in full force and effect. Given under our hands this the 6th day of Nov., 1935,'' which bond operated as a supersedeas.

The record came up to this court regular in form with said appeal bond operating as a supersedeas, and the cause was submitted here on briefs, and the attention of this court was not directed to any defects therein, nor was any proceeding taken at any time before the submission and decision of the cause to correct the record in any respect. By section 37, Code of 1930, it is provided, as follows: ''Appeal-bonds shall be sufficient if signed by one or more of several appellants, with sureties as required by law, and in case of the affirmance of the decree or judgment complained of, the judgment of affirmance shall be entered against all the appellants in the same manner as if all had signed such bond; but if the decree or judgment be affirmed as to some and reversed as to others of said appellants, the judgment of affirmance shall be entered only against those as to whom it is affirmed, and the sureties on the appeal-bond.''

From the statement of the case at bar, it will be seen that the appeal bond given was sufficient to bring the entire record and the judgment of the court below before us as to the tea company and G. E. Hart for review. It was unnecessary for Hart to sign the appeal bond in order to get the benefit thereof. He was joined

with the appellant in the bond, and subsequently no proceeding or notice to G. E. Hart to join in the appeal was required. The appellee was under no duty to have Hart brought in as an appellant. The judgment, both as to Hart and as to the tea company, was a supersedeas, and the appellee could not issue execution upon the judgment rendered in his favor against Hart.

By section 758, Code of 1930, it is provided that when a bond, or ·obligation of any kind shall be executed in any legal proceeding, it shall inure to the person to whom it is designed by law as a security, and be subject to judgment in his favor, no matter to whom it is made payable, nor what is its amount, nor how conditioned, and the persons executing such bond shall be bound thereby and shall be liable to the judgment or decree on such bond, as if it were payable and conditioned in all respects as prescribed by law, if such bond had the effect which a bond conditioned as prescribed by law would have had.

Where a party has signed a petition for appeal, he has made himself an appellant, and while not himself required to give bond, he cannot become a surety on the bond of any of the other appellants, since he is a co-appellant. Hudson v. Gray, 58 Miss. 591.

The surety company having executed a bond reciting that the Great Atlantic & Pacific Tea Company and G. E. Hart were appellants, and having contracted to pay same in case the appeal was not successful, is in no position now to say that Hart had not appealed. It is estopped to contend contrary to the stipulations in its bond and the recitals therein, as against appellee, Majure. Hauenstein v. Gillespie, 73 Miss. 742, 19 So. 673, 55 Am. St. Rep. 569, Fitzgerald v. Williams, 136 Miss. 250, 101 So. 370, and Furst v. Pease, 97 Miss. 468, 52 So. 257, in which the court said that: "The court below committed no error in charging the jury peremptorily to find a verdict for the appellee, Pease. In view of the recital in the forthcoming bond executed by Furst, ad-

mitting possession of the property sued for, he will not be heard to deny that he had possession of it at the time of the institution of the replevin suit and the service of the writ. The recital in the forthcoming bond operates as an estoppel upon him to deny the possession of the property. It is an admission, in most solemn form, of the possession of the property by him.''

See, also, Schneider v. Berry, 171 Miss. 89, 157 So. 91, where the court said that: ''The giving of the bond was an admission of the possession of the property and was equivalent to an admission that the property was in district No. 1 in which the writ issued and was returned. Fitzgerald v. Williams, 136 Miss. 250, 101 So. 370; Furst v. Pease, 97 Miss. 468, 52 So. 257.''

It was the duty of the appellant G. E. Hart to examine the records to see that its contents were correct and that all the proceedings were regular, and if they were irregular or incorrect, to call same to the attention of this court in an appropriate way to the defects in the record, and apply either to this court, or to the court below, for permission to have the record corrected prior to the submission to this court for decision.

See Union Motor Car Co. v. Cartledge, 133 Miss. 318, 97 So. 801, on the suggestion of error, where it is said that: ''It is the duty of the appellant in cases appealed to this court to see that the record certified by the clerk is correct, and, if not correct, to take steps to perfect it before submission for decision, and the court, after decision, will not on suggestion of error decide between conflicting certificates of the clerk; and where the original record shows the judgment appealed from to have been rendered and entered in vacation, the court will not consider certificates of the clerk that it was entered on the minutes in term time.''

In Brown v. Sutton, 158 Miss. 78, 121 So. 835, there was an elaborate discussion of this point, and again we held that corrections of the record could not be made after submission for decision, and that a certified record

filed for appeal, if a true transcript of record in the hands of the clerk, cannot be impeached in the appellate court, and cannot be altered by evidence of matters de hors the record.

The matter was further discussed in the case of National Box Co. v. Bradley, 171 Miss. 15, 154 So. 724, 157 So. 91, 92, 95 A. L. R. 1500, where Judge GRIFFITH, speaking for the court, said that: "Section 726, Code 1930, furnishes a simple and adequate method for the correction of the court reporter's transcript of the trial proceedings, and if counsel fail to avail of that simple method, a valid excuse should be offered as a predicate for a petition to correct the record after the transcript has been filed in this court. And, in any event, the application for the correction should be made before the submission of the case to this court," citing Brown v. Sutton, supra. "But this petition to correct the transcript was not presented in the trial court until the case had been decided by his court. It would be intolerable that applications by either party to correct the record should be entertained after decision by this court; and it has been expressly decided that such applications after decision here are too late. Ross v. McIntyre, 53 Miss. 133; Union Motor Car Co. v. Cartledge, 133 Miss. 318, 333, 97 So. 801."

It is manifest from these decisions that the surety company, in the case at bar, cannot now set up and rely upon any defect in the proceedings, or the alleged statement that G. E. Hart had not authorized an appeal. The bond operated to stay the proceedings on the judgment as to Hart and the tea company, and judgment must be rendered here on this bond.

Can Hart set up that the appeal was not authorized under the facts contained in this record?

It is true that attorneys have no right to appeal on behalf of clients after the rendition of judgments in the court below without authority from clients; but, may not a party who has employed an attorney be estopped from

setting up want of authority in such attorney to take an appeal, where such attorney has conducted the trial in the lower court and has taken numerous steps in the client's behalf which would promote his interest in prosecuting an appeal?

It will be seen from a statement of the case at bar that the record shows that the petition for appeal was filed jointly and severally by the tea company and G. E. Hart, and was signed by the attorney representing each of them in the trial in the court below, and that notice was given to the stenographer by such attorney to transcribe his notes of evidence in the case on the appeal "for us." All of these steps were taken and an appeal bond for Hart and the tea company was given, and so the record stood, when on or about the 21st day of December, 1935, after the appeal was purported to be perfected, Hart was notified that the attorneys had prepared the case by giving the necessary notice and petitions for appeal, etc. Had he examined the record thus prepared, he would have seen and known that his attorneys, or those who had been authorized to act for him, had taken action prejudicial to the interest of the appellee by which the bond operated as a supersedeas, and no execution could be issued, and thus ascertaining was not Hart under duty to act promptly to give notice to the attorneys conducting the litigation that they had acted for him without his authority, and to take the proper steps to have the appeal as to him nullified, and the record corrected so as to show that he had not, in fact, appealed? May a party, in this situation, sit silently by and let the proceedings operate prejudicially to his adversary? Section 20, Code 1930, provides that, in order to obtain an appeal from any judgment or decree, the litigant shall petition, in writing, the clerk of the court where the judgment or decree was rendered. Section 21, Code 1930, sets forth the provisions of such petition for appeal, and section 52, Code 1930, provides that summons to answer such appeal shall be served by

the sheriff of the proper county on the appellee, or his attorney in fact or of record, ten days before the time it is returnable. This section shows that the attorney who has been employed in a case, or made the agent of the appellee for the service of process, is recognized as the attorney on an appeal. Section 38, Code 1930, authorizes an appeal on behalf of a corporation by attorneys in the name of the corporation.

We do not mean to hold that an attorney is authorized to prosecute an appeal without the consent, or against the wishes of his client, but situations may arise when, as between a client and another party, the client may be estopped from denying the authority of his attorney to take any steps in the litigation wherein such attorney has been employed. It is always presumed that an attorney who has represented a party is authorized to do all acts necessary to properly conduct the litigation, and the party denying such authority has the burden of showing his want of authority, and is bound, as to the opposite party, by any act which the attorney does in the regular course of practice, however improper the act may be, if done without fraud or collusion.

Grand Court of Colanthe v. Downs, 98 Miss. 740, 53 So. 417, 418. In this case, Judge ANDERSON, speaking for the court, said that, ''It is presumed that an attorney, assuming to represent a party, is authorized to do so, and to do all acts necessary to the proper conduct of the cause, and the party denying such authority, has the burden of showing his want of authority. A party to a suit may appear in person or by his attorney, and, if by attorney, he is bound, as to the opposite party, 'by every act which the attorney does in the regular course of practice, and without fraud or collusion, however injudicious the act may be.' He can give no instructions to his attorney which he can take advantage of as against his adversary.'' Schirling v. Scites, 41 Miss. 644, and Lester v. Watkins, 41 Miss. 647.

But, in the recent case of Hirsch Bros. & Co. v. R. E.

Kennington Co., 155 Miss. 242, 124 So. 344, 88 A. L. R. 1, we held that an attorney could not bind a party unless he had been employed by such party, and overruled the earlier decisions holding that a party was bound by every act of the attorney he had employed.

It seems to be the sound principle that where a party employs an attorney, and such attorney acts for him in the court proceedings, such acts being presumptively authorized, and a third party is injured by such act of the attorney, and where the party for whom the attorney acts does not take reasonable steps to overcome, or undo, the wrongful consequences of the act of the attorney, such party is estopped from setting up any want of powerer in the attorney to act for him.

So applying this reasoning to the case at bar, we are of the opinion that G. E. Hart, having taken no steps to correct the alleged unauthorized act of his attorney, after a reasonable opportunity to know thereof, should be estopped now, after the decision of the cause, from setting up any want of authority in his attorney.

One further observation: We have already called attention to and quoted section 37, Code 1930, which provides that an appeal bond shall be sufficient if signed by one or more of several appellants. Let us suppose that there are several defendants in the trial court, and, after judgment adverse to all of them, a supersedeas appeal bond, naming all of them as appellants and as principals in the bond, is given and approved, signed, however, by only one of the parties named therein as appellants; and suppose that the case is submitted to the Supreme Court on that record and the judgment is affirmed as to one of the appellants who did not sign the bond and reversed as to all the others, and suppose we should then open the doors of this court to the surety on the appeal bond after decision to show that the appellant who did not actually sign the bond, and as to whom the decision was adverse here, had never, in fact, authorized an appeal—just how wide would this be to

the admission of uncertainties in procedure and even to fraud itself? And this is stated without the slightest intimation that there has been any wrongful conduct of any kind in this present case.

Sureties on an appeal bond, upon the filing and approval of the bond, make themselves parties to the appeal, and answerable to the appellee, in respect to all questions touching liability on that bond. Since it is necessary that only one of several appellants shall sign the bond, it is the business of the surety or sureties to know who are the actual appellants for whom the bond is being executed, and the time to find that out is at the time of the signing and delivery of the bond. Since such is the business of the surety or sureties, there is no hardship in requiring the surety or sureties to attend to that business. And is there any safe course that this court can pursue other than to say to the surety or sureties on said appeal bond that those who are actually appellants must be ascertained by the surety or sureties before the bond is signed, and approved, or certainly before the case is submitted and decided, and that after an appeal bond brings a case here, and the case has been submitted and decided, all who are recited therein as appellants must be held to be appellants, so far as the said surety or sureties are concerned? We think there is no other safe course, and we must direct that judgment be entered against the appellant Hart and the surety on the bond.

It is so ordered.