Miley *v.* Foster, et al.

No. 40263 November 5, 1956 90 So. 2d 172

*Melvin, Melvin & Melvin,* Laurel; *Laurel G. Weir,* Philadelphia, for appellant.

*Sanford & Alford,* Philadelphia; *Joseph S. Mead,* Birmingham, Alabama, for appellees.

Holmes, J.

This is an action for libel and slander brought by the appellant, E. L. Miley, in the Circuit Court of Newton County against the appellees, Charles E. Foster, a resident of Newton County, Implement Dealers Mutual Insurance Company, a non-resident corporation domiciled in the State of North Dakota and doing business in Mississippi, and W. J. Perryman and Company, Inc., a non-resident corporation domiciled in the State of Alabama and having its principal office in Birmingham, Alabama.

The trial in the court below resulted in a jury verdict and judgment for appellees, and from the judgment entered, this appeal is prosecuted.

The case arose as follows: The appellant and his brother, Monroe Miley, operated a meat market in the

rear of the Jitney Jungle store in Union, Mississippi. W. J. Perryman and Company, Inc., was the general agent for the Implement Dealers Mutual Insurance Company for the territory embracing Mississippi, and appointed Charles E. Foster as the local agent of the company in Union, with authority to accept risks and countersign and service policies of insurance. In the course of his business, Foster wrote and delivered to the Mileys a policy of insurance in the Implement Dealers Mutual Insurance Company covering their meat market, effective January 1, 1955. Thereafter Foster received the following letter from W. J. Perryman and Company, Inc.:

"January 26, 1955

"Mr. Charles E. Foster
 Foster Mutual Insurance Agency
 Box 222
 Union, Mississippi
Dear Mr. Foster:

Re: Implement Dealers No. 41227

E. L. & M. Miley

We have recently only been able to complete an engineering report of the above risk and in view of the information which we have received, we will be unable to continue this liability.

Our report covers the financial condition of the insureds and their credit rating and in view of the information which we have, we will have to ask to be relieved of liability without any delay.

The early receipt of the policy as evidence of cancellation will certainly be appreciated.

Yours very truly,

W. J. Perryman & Company, Inc.
s/ K. L. Williams
Chief Underwriter"

KLW/fb

Upon the receipt of said letter and pursuant to the instructions therein contained, Foster promptly mailed to the Mileys a notice of cancellation, dating the same January 31, 1955, and making the cancellation effective February 5, 1955. The policy contained a provision permitting either the insuror or insureds to cancel the policy on prescribed notice. Foster and the appellant were personal friends. Foster traded at the appellant's market and had other policies of insurance in force which he had written for the appellant, notably, insurance on the appellant's residence and garage. After issuing the notice of cancellation, Foster called on the appellant at his meat market to show him the letter by way of explanation as to why he was required to issue the notice of cancellation, and to offer to write the insurance in another company. After showing or reading the letter to the appellant, Foster wrote the insurance in another company and the appellant paid the premium thereon, and this insurance and the other policies which Foster had written on the appellant's residence and garage were continued in force. Later this suit was filed. The appellant charged in his declaration that the letter in question was libelous and that the contents thereof were untrue and that it was written maliciously with intent to injure the appellee in his good name, fame, and reputation; that Foster read the letter to the appellant in his meat market in a loud voice in the presence of others, and angrily and maliciously charged the appellant in the presence of others with being dishonest and not paying his debts and with committing a crime by burning a building to collect the insurance thereon.

The appellees filed separate answers, denying that the letter in question was libelous, or that it was written maliciously, and averring that the contents thereof were privileged, and denying that Foster had made the charges against the appellant as alleged in the declaration.

The proof as to what was said by Foster to the appellant in the meat market was in conflict. The appellant testified that on the occasion when Foster called on him in the meat market Foster publicly and in the presence and hearing of others uttered the defamatory statements as alleged in the declaration, and he introduced several witnesses to corroborate him. On the other hand, Foster categorically and specifically denied that he made the statements which the appellant ascribed to him in his declaration and in his testimony, and denied that he had any malice toward the appellant, but on the contrary, testified that he and the appellant were friends and that he wanted to retain his friendship and his insurance business. Banks McNair, a witness for the appellees, testified that he was a mutual friend of the appellant and Foster, and when he learned of the suit he accompanied the appellant to Foster's office; that Foster was not in his office but that a copy of the declaration was on his desk; that he went over the declaration with the appellant and asked him if the charges in the declaration were true and if he had made them, and he said that the charges were not true and that he had not made them and that he would see his lawyer about the matter.

In submitting the case to the jury, the court instructed the jury that the contents of the letter in question were not libelous and left to the determination of the jury the question as to whether Foster had made the defamatory statements ascribed to him in the declaration. This question was resolved by the jury in favor of the appellees.

The appellant contends that the verdict of the jury is against the overwhelming weight of the evidence. We do not think so. The evidence on the question as to whether Foster made the defamatory statements ascribed to him was in conflict and clearly presented a question

for the jury's determination, and there is ample evidence to support the verdict of the jury.

We are of the opinion that the court correctly instructed the jury that the letter in question was not libelous. A casual reading of the letter discloses that it contains nothing of a defamatory nature. If the letter had been libelous, however, it was clearly a qualifiedly privileged communication written by the general agent to his local agent about a matter in which both were interested and would not form the basis of an action in the absence of a showing of malice. In the case of Louisiana Oil Corporation, et al v. Renno, 173 Miss. 609, 157 So. 705, the Court defined a qualifiedly privileged communication as one made in good faith without malice by a person having an interest in or duty respecting the subject to a person having a corresponding interest or duty, though containing otherwise slanderous matter.

In the very recent case of Killebrew v. Jackson City Lines, Inc., 82 So. 2d 648, the Court said: "In the absence of proof that the words were spoken by motives of spite, ill will, malicious purpose, or of a wanton disregard whether the words were true or false, the privilege of the occasion is not destroyed," citing Louisiana Oil Corporation, et al v. Renno, supra, and Scott-Burr Stores Corp. v. Edgar, 181 Miss. 486, 177 So. 766.

That the writer of the letter was not actuated by malice, spite, ill will or a wanton disregard whether the words written were true or false is inescapable from the evidence. W. J. Perryman and Company did not even know the appellant. The letter was written upon information furnished by a reliable credit reporting agency, and there is nothing in the evidence to indicate bad faith on the part of the writer of the letter.

The appellant further contends, however, that the court erred in admitting in evidence the credit report which formed the basis of the letter. We find no merit

in this contention. The evidence is undisputed that it is a matter of common business practice for insurance companies to have investigated the credit rating of prospective insureds, and of business concerns generally to make fair investigation as to the credit standing and reputation of those with whom they contemplate doing business. And it is further undisputed in the evidence that the reporting agency who made the report was a reputable agency. We think that the general agent of the insurance company had the right to rely upon this report. If one to whom a credit report is made by a reputable agency must before relying upon the report ferret out the accuracy of the information contained in the report, then the entire purpose and function of a reporting agency would be defeated. If for no other reason, the report was admissible, competent and pertinent on the question of the good faith and freedom from malice on the part of the writer of the letter.

 █ It is further contended by the appellant that the court erred in not permitting him to show the financial worth and condition of the appellee insurance company. This evidence was of course offered under the issue of punitive damages. Without other discussion that might be made of this complaint, it is sufficient to say that in view of the jury's verdict which denied the appellant the right to recover even actual damages, the action of the court in sustaining the objection to said evidence was harmless and does not constitute reversible error.

We have carefully considered the exceptions of the appellant to a number of the court's instructions and find in them no basis for reversal.

Considering the record as a whole, we are of the opinion that the case was properly submitted to the jury under instructions which correctly announced the applicable controlling principles of law, and that the record

reveals no reversible error. The judgment of the court below is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* Concur.