Lucille **GORDON**, Plaintiff,

v.

**TENNECO RETAIL SERVICE COMPANY**, Defendant.

**No. EC86–125–S–D.**

United States District Court,
N.D. Mississippi, E.D.

Aug. 14, 1987.

William L. Bambach, Columbus, Miss., for plaintiff.

Charles R. Davis, Julie E. Chaffin, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for defendant.

## OPINION

SENTER, Chief Judge.

This cause comes before the court on defendant Tenneco Retail Service Company's motion for summary judgment.[1] For the reasons discussed below, the court grants this motion as well taken.

### Facts

Plaintiff, Lucille Gordon, was employed by Tenneco as a cashier in a retail service outlet in Columbus, Mississippi. There was an employment agreement which Ms. Gordon signed. The employment agreement contained provisions stating that the contract may "be terminated at any time by Tenneco with or without advance notice or liability." The contract also contained agreements that the employee would agree to submit to a polygraph examination at any time and that the employee authorized release of both that polygraph record and her employment record generally.

In January, 1986, an outside audit of the station was conducted. The auditors discovered shortages of cash and merchandise at the store. Most of the employees quit rather than take the polygraph examination. Ms. Gordon took the examination. In the course of the examination, Ms. Gordon admitted removing $0.50 per day from the register and repaying the amount at the end of the week. She admitted taking a $14.99 clown doll on Christmas Eve and repaying that amount at a later time. She also admitted drinking on the job on one occasion and taking amphetamines on another occasion. The polygraph operator drafted a report based on the investigation which found that Ms. Gordon had taken $3.00 to $5.00 per week in cash and $10.00 to $15.00 in merchandise per week. In his report, he claims to have confronted Ms. Gordon and to have received an admission from her that the amounts taken are essentially correct.

Kerry Swickard, the area supervisor, told Shirley Bailey, the store manager, to terminate Ms. Gordon for violations of company policy and to state that the termination was for "failure to cooperate with the inventory investigation." Ms. Bailey called Ms. Gordon into the storeroom/office and closed the door. No one else was present.[2] Ms. Bailey told Ms. Gordon that Swickard wanted Ms. Gordon to fill out a statement that she had taken $15.00 per week in merchan-

1. Although no formal motions were made, each party has suggested in its brief that the other party should be sanctioned. The deadline for dispositive motions was March 6, 1987. Service was by mail and an additional three days were therefore available under Fed.R.Civ.P. 6(e). The Defendant's Motion for Summary Judgment or, in the Alternative, For Partial Summary Judgment was received by the court on March 9, 1987. The motion was therefore timely made. No sanction for late filing is appropriate. In light of the decision in *Shaw v. Burchfield*, 481 So.2d 247 (Miss.1985), with its clear implication of abandonment of the employment at-will doctrine, no complaint alleging wrongful termination can be regarded as frivolous. Here, too, sanctions would be inappropriate.

2. In his deposition, Mr. Johnny Gordon stated that he waited outside the storeroom about fifteen minutes before Ms. Bailey came out and asked him to join her and Ms. Gordon in the storeroom. This is consistent with the statements of both Ms. Gordon and Ms. Bailey as to the events on that day. In their affidavits, both Mr. and Ms. Gordon implicitly contradict their prior testimony. The court must consider the affidavits as the most recent statements by the parties as to the facts of the situation. But this does not prevent the court from considering the impact of the prior deposition testimony on the credibility of the witnesses. For an issue of fact to be genuine and preclude summary judgment, the court must determine whether a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The conflict between the deposition testimony and the affidavit clearly brings the credibility of the witnesses into question. *Compare* Affidavit of Johnny W. Gordon (March 19, 1987) *with* Deposition of Johnny W. Gordon, pages 7–8. *Also compare* Affidavit of Lucille Gordon (March 20, 1987) *with* Deposition of Lucille Gordon, pages 22–25. Based on the preceding conflicts in the testimony and the obvious self-interest involved where a plaintiff and a relative testify to occurrences in issue, the court must discount the version of the facts presented in the affidavits.

dise and $3.00 per week in cash. Ms. Gordon refused to sign such a statement. Ms. Bailey then told Ms. Gordon that Tenneco was terminating the employment agreement. Ms. Gordon then began denying that she had stolen anything. After several minutes, Ms. Bailey asked Mr. Gordon to come into the storeroom.[3] Ms. Bailey told Mr. Gordon that she wanted to explain why his wife was being fired and why signing the memo would not change this. Ms. Gordon continued to protest her innocence. Ms. Bailey made no comment. Mr. Gordon then asked his wife if she was going to stay and work or come home. Ms. Bailey then told him that Ms. Gordon could not stay and work because she no longer had a job. Ms. Gordon alleges that Ms. Bailey subsequently told Alice Shaw and Bobby Redmon, other employees at the station, the reason for her termination.

Ms. Gordon subsequently applied for unemployment compensation. She received a notice of disqualification because she was discharged for misconduct. The notice stated:

> You were separated from your employment with Tenneco of Columbus, Mississippi, on February 3, 1986. An investigation reveals that you admitted to taking cash and merchandise from the store while taking a polygraph test. You also admitted to drinking on duty. It is determined that your actions constituted misconduct in connection with the work. You are disqualified from the receipt of benefits as indicated above.

## Conclusions of Law

Based on the above facts, Ms. Gordon has alleged wrongful termination of an employment agreement and defamation of

character. Tenneco has moved for summary judgment on both grounds.

### 1. Termination of the Employment Agreement.

█ Ms. Gordon signed an employment agreement giving Tenneco the right to terminate the employment without notice at any time. Under the law of Mississippi, such contracts are clearly enforceable. *Vestal v. Oden,* 500 So.2d 954 (Miss.1986); *Shaw v. Burchfield,* 481 So.2d 247 (Miss. 1985). The plaintiff contends that the firing was invalid despite the contract because Tenneco attempted to induce her to commit perjury. The plaintiff cites *Merkel v. Scovill, Inc.,* 573 F.Supp. 1055 (S.D. Ohio 1983), and *Hansrote v. Amer. Indus. Technologies, Inc.,* 586 F.Supp. 113 (W.D.Pa. 1984), *aff'd,* 770 F.2d 1070 (3d Cir.1985), for the proposition that an employee's refusal to commit perjury falls under a public policy exception to the general rule of termination at will.

The request that Ms. Gordon confirm in writing what she admitted in the polygraph investigation does not constitute an attempt to suborn perjury.[4] Further, the testimony of Ms. Bailey indicates that Ms. Gordon would have been fired regardless of whether she signed the statement. The depositions of Mr. and Ms. Gordon indicate that statements to this effect were made to them on the day of the termination. Even viewing these facts in the light most favorable to the nonmoving party, it is not possible for a reasonable jury to find that the plaintiff was fired solely because she refused to perjure herself. Further, Mississippi has not yet recognized a public policy exception to the general rule of termination at-will. *Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874 (Miss.1981) (refusing to

---

**3.** Ms. Bailey states she did so at Ms. Gordon's request. Ms. Gordon denies that she requested her husband's presence and states that Ms. Bailey asked him into the room on her own initiative.

**4.** Under Miss. Code Ann. §§ 97–9–61, 97–9–63, and 97–9–65 (1972), a statement is not perjury unless the statement is made in connection with "any case, matter, or proceedings, in or concerning which such witness shall be legally sworn and examined." Here the statement was

a mere written confirmation of a previously given oral statement. Even if the statement were untrue, it was not made in connection with a case, matter, or proceeding in which Ms. Gordon would be legally sworn or examined as a witness and, consequently, the statement would not be perjury. *See Echoles v. State,* 254 Miss. 133, 180 So.2d 630 (1965). Mississippi has no law against making an unsworn false statement in writing.

recognize public policy against retaliatory discharge under Worker's Compensation Statute). *But see Perry v. Sears, Roebuck and Co.,* 508 So.2d 1086 (Miss.1987) (stating that court may recognize public policy exception if an appropriate case is presented). Since there was no subornation of perjury and since there is no remedy at law in Mississippi even if there was subornation, summary judgment should be granted to the defendant on this ground.

## 2. Defamation of Character.

■ Ms. Gordon additionally contends that Tenneco defamed her by disclosing the reason for her firing to her husband, to other employees, and to the Mississippi State Employment Security Commission. Mississippi recognizes a tort of defamation relating to the improper disclosure of the reason for termination. *See Montgomery Ward & Co., Inc. v. Skinner,* 200 Miss. 44, 25 So.2d 572 (1946) (manager accused three clerks of improper behavior in the presence of customers). But Mississippi also recognizes a defense of privilege when a "communication is made in good faith and on subject-matter in which the person making it has an interest, or in reference to which he has a duty is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith." *Louisiana Oil Corp. v. Renno,* 173 Miss. 609, 157 So. 705 (1934). A statement made within the scope of the privilege will be presumed to be in good faith absent a showing of actual malice. *Id.* Each of the disclosures listed by the plaintiff in her complaint falls within one of the recognized privileges.[5]

Bobby Redmon and Alice Shaw were other employees of Tenneco. The courts of Mississippi have held that a statement by a manager to a group of employees that an employee was fired for theft was a privileged statement. *Gardner v. Standard Oil Co.,* 179 Miss. 176, 175 So. 203 (1937). These disclosures were clearly within the scope of a privilege.

Other jurisdictions have ruled that disclosures to close family members are protected by a qualified privilege as well. *See, e.g., Thomas v. Kaufmann's,* 436 F.Supp. 293, 295–97 (W.D.Pa.1977) (qualified privilege protected employer's stealing accusation made in presence of plaintiff's father, mother, sister, and boyfriend); *Manning v. McAllister,* 454 S.W.2d 597, 598–601 (Mo. App.1970) (qualified privilege protected employer who stated reason for plaintiff's discharge to plaintiff's sister-in-law and father-in-law); *Rauch v. Gas Service Co.,* 241 Mo.App. 976, 235 S.W.2d 420, 426 (1950) (qualified privilege protected employer's accusation volunteered to plaintiff's wife); *overruled in part, on other grounds, Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506 (Mo.1986). Mississippi has recognized a qualified privilege when the interest in the third party to whom the publication is made is more remote than the familial interests described above. *See Scott-Burr Stores Corp. v. Edgar,* 181 Miss. 486, 177 So. 766 (1938) (qualified priv-

---

5. The plaintiff has alleged malice in her complaint. But the defense has supported its motion for summary judgment with material from the plaintiff's own deposition showing good relations existed between Ms. Gordon and Ms. Bailey at the time of the firing. The plaintiff has not rebutted this information in her response, nor has she made any showing of malice in the affidavits attached to her response. The mere making of an accusation in a pleading will not suffice to prevent issuance of summary judgment. There must be a factual basis for the statement in the record. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The plaintiff has presented no factual basis for a finding of malice in this case. Because of the presumption of good faith in a communication covered by a qualified privilege, the burden of proving malice is upon the plaintiff. When considering summary judgment in a defamation case, the court "must bear in mind the actual quantum and quality of proof necessary to support liability." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), a complete failure of proof by the nonmoving party on an element renders all facts immaterial, permitting the movant to gain summary judgment on the issue merely by pointing out the absence of evidence. Here the defendant has exceeded that burden by introducing evidence from the plaintiff's own deposition as to the good relations between Ms. Gordon and Ms. Bailey.

**912**

ilege protected store from liability for publication to companion who accompanied plaintiff into store on common mission). Any disclosure which may have been made to Mr. Gordon in the course of the meeting in the storeroom would accordingly be within the privilege.

The communication with the Mississippi Employment Security Commission is similarly privileged. The legislature has expressly provided that all communications between the Mississippi Employment Security Commission and a private employer made in connection with the administration of benefits are absolutely privileged unless false in fact and maliciously made for the purpose of denying benefits. Miss. Code Ann. § 71–5–131 (1972). As noted *supra,* the plaintiff has absolutely failed to make any showing of malice. Nor can the statement to the Commission be said to be false in fact. The plaintiff has failed to provide the court with a copy of the statement filed with the Commission. The statement which the Commission gave to Ms. Gordon essentially restates the polygraph examiner's report. The statements on this report agree in most respects with Ms. Gordon's deposition testimony. The primary difference is the statement that the examiner believed that she was being deceptive about the amounts taken. Neither the examiner's report nor the statement from the Employment Security Commission uses any wording indicating theft. Each statement is that Ms. Gordon admitted to taking cash and merchandise. Ms. Gordon's deposition contains these precise admissions. The communication from Tenneco to the Mississippi Employment Security Commission was clearly privileged under the statute.

### Conclusion

For the reasons stated above, the court finds that the complaint does not state valid claims as to either wrongful termination or defamation. The court sustains Defendant's Motion for Summary Judgment.

An appropriate order shall issue.