**William DAVIS, Plaintiff,**

v.

**CECO BUILDING SYSTEMS, Defendant.**

**No. 1:91CV194–S–D.**

United States District Court, N.D. Mississippi, E.D.

Feb. 24, 1993.

Jim D. Waide III, Tupelo, MS, for plaintiff.

Taylor B. Smith, Timothy M. Threadgill, Columbus, MS, for defendant.

## OPINION

SENTER, Chief Judge.

In this case, the plaintiff alleges that the defendant violated the ADEA when it terminated his employment in 1990. Additionally, he charges that the defendant defamed him before the Mississippi Employment Security Commission (MESC) when it disclosed to that body its reason for termination. This cause is now before the court on the defendant's motion for summary judgment.

## FACTS

The plaintiff, William Davis, first began working for the defendant, Ceco Building Systems, as a guard. Later (in approximately 1987), Mr. Davis bid on a plant job that Ceco had posted, and, after receiving the job, he moved into the actual plant facility, where he worked in the sheet forming department as a sheet pack-out operator. On several occasions while working in this department, Mr. Davis heard his immediate supervisor state, " 'For an old man ... you are doing extremely well.' " Mr. Davis was unsure whether these statements were "said out of jest or ... how he meant it...."

On February 27, 1989, Mr. Davis suffered a severe on-the-job knee injury. Approximately five months later, he returned to Ceco to a light duty job building hanger straps (also referred to as "gutter clips"). Although this was a part-time, "rotating job" which "required [only] about 25 per-

cent of somebody's time," according to Ceco's production manager and 30(b)(6) corporate representative, Billy Hydrick, it was offered to Mr. Davis on a full-time basis "to help [him] recuperate." Mr. Davis himself acknowledged that this was a job to which no one was regularly assigned.

Because his knee continued to cause him problems, Mr. Davis was forced to undergo additional surgery in September, 1989. Two months later, he returned to his job at Ceco making hanger straps. On this occasion, he worked until March, 1990, when he was laid off. However, to avoid laying off Mr. Davis, Ceco first offered him a job as a press brake operator, which he declined "[o]n account of [his] injury."

Throughout this period, Mr. Davis was treated by Dr. Charles Rhea, an orthopedic surgeon. Of particular interest are Dr. Rhea's notes of Mr. Davis's April 30, 1990, visit:

[Mr. Davis] was previously laid off with a group layoff at work, but he feels he is able to return back to the job at which he was previously performing prior to his implant removal. He also feels that he is improving in function and endurance and he feels he may be ultimately able to return to his previous job with little limitations. I see no reason for him not to attempt this. I think if he is able to return and be gainfully employed in his previous job activity, then he should certainly make every attempt to do so. I am not going to place any specific medical restrictions on him concerning this. If he finds he is not able to meet these demands, then he may wish to consider alternative employment. I feel he has reached a point of maximum medical improvement and because of ... [the] injuries and physical factors, I feel he has a permanent physical impairment of 43% to the left lower extremity or 17% of the body as a whole.

These findings were later reduced to a final workers' compensation report dated May 9, 1990, which also indicated that Mr. Davis was "capable of doing similar or other employment as before injury" and that he was not under any physical restrictions.

On May 22, 1990, Ceco recalled Mr. Davis for temporary work in research and development. This assignment lasted until June 15, 1990, when Mr. Davis was again laid off. Within a few days, a press brake operator's position opened. According to Mr. Hydrick, he and the personnel manager, Anita Shearer, considered the possibility of Mr. Davis's filling this job:

[Ms. Shearer] talked to me and said, "What do you think about offering him this job?" And I agreed, it is the lightest job we had in my opinion. I said, "Okay. I am for it. Anything ... to get him going, get him on the payroll and work[ing], because his performance in the past has been great."

Mr. Hydrick and Ms. Shearer also discussed the "company policies on ... what [we] have ... got to do if he turns it down. And that is what we had to do, was follow the company policy. We had to terminate him."

Accordingly, based on Mr. Hydrick's "considered opinion that ... this was a position in which [Mr. Davis] could certainly make an effort and attempt to perform," Davis was recalled and again offered the press brake operator's position. At that time, Ms. Shearer advised Davis that this was "the only job they had, period," and that he would " 'have to take it or leave it.' " Mr. Davis testified that at the time he believed "there was other jobs that was open." In particular, he "knew" of two openings, one of which was "a job up in the office" that entailed going "about the plant taking orders and copying orders out from the salesmen from the front office." He maintained during his deposition that he discussed this office job with Ms. Shearer, who allegedly told him that it "was ... too time consuming to let [him] have the job...."

Although Davis hesitated about accepting the press brake operator job, he told Ms. Shearer that he would try it. However, overnight, he changed his mind and typed a letter to Ms. Shearer explaining "that [he] just didn't feel like ... [he] could take the job...." In response, Ceco terminated Mr. Davis's employment pursuant to a long-standing company policy mandating termination of any laid off employee who refuses "to accept recall when a reasonably comparable position becomes available." At the time, Davis was fifty-seven years old.

On March 11, 1991, over eight months after his termination, Mr. Davis filed a charge of age discrimination with the EEOC. In that document, he maintained, "On approximately February 10, 1991, I learned that my light duty position had been filled by a woman in her late 20's or early 30's." This allegation was later fleshed out in Davis's complaint to this court:

Plaintiff discovered that the information given him was false and that the brake press operator was not the only job available.... On [or about February 10, 1991], Plaintiff learned that the Defendant had hired two (2) persons for light duty work which Plaintiff could have done. Specifically, Plaintiff discovered, on or about February 10, 1991, that the Defendant had hired Webb and Davis, two (2) young persons, and put them in light duty type positions which Plaintiff could have performed.

In addition to his ADEA claim, Davis charges in his complaint that Ceco violated his rights under state law

since it maliciously defamed Plaintiff by falsely claiming to the Mississippi Employment Security Commission that Plaintiff had refused to take a job which he was able to perform. This misinformation was done for the malicious purpose of keeping Plaintiff from drawing unemployment benefits.

DISCUSSION

Ceco's motion for summary judgment is based on the following grounds: (1) Mr. Davis's EEOC charge was untimely, thus precluding the instant action; (2) assuming the charge was timely, Davis has failed to rebut Ceco's legitimate, nondiscriminatory reasons for his discharge; and (3) Ceco's representations to the MESC are privileged. In response, Mr. Davis argues that equitable considerations mandate tolling

the time period for filing the EEOC charge and that genuine issues of material fact preclude the entry of summary judgment.

## I.

■ The ADEA requires that a charge of age discrimination must be filed with the EEOC within 180 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(1); *Blumberg v. HCA Management Co.*, 848 F.2d 642, 644 (5th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989). This requirement, which "functions as a statute of limitations rather than a jurisdictional prerequisite," *Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876, 878 (5th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991), is "a pre-condition to filing suit in district court, but is not related to the subject matter jurisdiction of the court." *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir.1981) (en banc). This 180–day period "begins when facts that would support a cause of action are or should be apparent," *Blumberg*, 848 F.2d at 645, and "generally begins to run when the employee receives notice of the allegedly discriminatory decision, not when the employment actually ceases." *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992). *See also Rhodes*, 927 F.2d at 878; *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975) (statute of limitations does not begin to run until facts that would support charge of discrimination "were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff"). Although a suit based upon an untimely charge should be dismissed, *Barrow v. New Orleans Steamship Association*, 932 F.2d 473, 476–77 (5th Cir.1991), the "filing deadline is … subject to equitable modification, i.e., tolling or estoppel, when necessary to effect the remedial purpose of ADEA." *Rhodes*, 927 F.2d at 878; *see also Conaway*, 955 F.2d at 362. Plaintiff bears the burden of demonstrating a factual basis for the application of either of these

doctrines. *Conaway*, 955 F.2d at 362; *Rhodes*, 927 F.2d at 879. *See also Blumberg*, 848 F.2d at 644.

■ The Fifth Circuit has recently drawn a technical distinction between the doctrines of equitable tolling and equitable estoppel. In particular, equitable tolling

> "focuses on the plaintiff's excusable ignorance of the employer's discriminatory act…." A case of equitable tolling would arise, for example … if the employee "could not by the exercise of reasonable diligence have discovered essential information bearing on his claim." Equitable tolling focuses on the employee's ignorance, not on any possible misconduct by the employer.

*Rhodes*, 927 F.2d at 878 (citations omitted). This doctrine has its limits, however:

> It does not permit plaintiffs to suspend the time for filing discrimination complaints indefinitely…. It is to be expected that some relevant facts will come to light after the date of an employee's termination—one purpose of filing an administrative complaint is to uncover them. The requirement of diligent inquiry imposes an affirmative duty on the potential plaintiff to proceed with a reasonable investigation in response to an adverse event.

*Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir.1992).

■ In contrast to equitable tolling, equitable estoppel " 'examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights.' " *Rhodes*, 927 F.2d at 878 (citation omitted). Specifically,

> [u]nder equitable estoppel, an employer is estopped from asserting the filing period if the employer misrepresented or concealed "facts necessary to support a discrimination charge." If the defendant did conceal facts or misled the plaintiff and thereby caused the plaintiff not to assert his rights within the limitations period, the defendant is estopped from

asserting the EEOC filing time as a defense.

*Id.* at 878–79 (citations omitted).

Although for most purposes these two doctrines are distinct, "equitable estoppel and tolling intertwine where the clock is stopped, because a defendant has misled a plaintiff, until the plaintiff knows or should know the truth." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 810 n. 14 (5th Cir.1991).

■ In this case, Mr. Davis's deposition testimony clearly reveals that he "knew" there were other jobs available besides the press brake operator's and that he questioned Ms. Shearer about these openings at the time she informed him that the press brake operator's position was "the only job they had, period." Accepting his version of the facts as true—specifically, that there were other jobs available at Ceco that he could have filled—the court is of the opinion that Mr. Davis should have suspected at that point that Ceco was possibly misleading him or concealing its true reasons for terminating his employment. Although Mr. Davis may not have known the exact contours of his age claim at the time of his termination, *see Blumberg*, 848 F.2d at 645 (it is not necessary for claimant to know all of evidence for him to file claim or to begin 180–day period), he, like any "person similarly situated with a prudent regard for his rights," *Reeb*, 516 F.2d at 931, was certainly in a position "to evaluate the propriety of the reasons for [his] dismissal immediately." *Blumberg*, 848 F.2d at 645. *See also Conaway*, 955 F.2d at 360, 362 (because plaintiff knew by time he was terminated that three new younger salespersons had been hired, although reason given for his termination was cut-back in personnel, limitations period not tolled on basis of plaintiff's ignorance of discrimination). *Cf. Rhodes*, 927 F.2d at 877 (plaintiff's termination because of reduction in force seemed credible since he worked in oil industry which was suffering effects of deep recession); *Coke*, 640 F.2d at 586–87, 595 (after demoting plaintiff and replacing him with younger person, defendant, on several occasions, assured one of its clients that it intended to reinstate plaintiff knowing that client would convey misrepresentations to plaintiff); *Reeb*, 516 F.2d at 930 (when plaintiff was told she was being terminated because of lack of funds, she did not question this reason since defendant had previously terminated her for identical reason). The court therefore finds that Mr. Davis's charge of discrimination, filed over eight months after his termination, was untimely and not subject to any equitable modification.

## II.

■ Assuming arguendo that the EEOC charge was timely filed, the court is of the opinion that Mr. Davis has presented no more than a mere scintilla of evidence to support his claim of age discrimination. This, of course, is insufficient to survive summary dismissal. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Although Davis has raised several points in an attempt to create a genuine issue of material fact with respect to whether the reasons articulated by Ceco were pretexts for intentional age discrimination, *see generally Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), these matters suggest only to an "'attenuated possibility that a jury would infer a discriminatory motive.'" *Thornbrough v. Columbus & Greenville Railroad Co.*, 760 F.2d 633, 645 n. 19 (5th Cir.1985) (citation omitted). Furthermore,

> "[a] party against whom summary judgment is sought cannot raise a fact issue simply by 'asserting a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.'"

*Clark v. Resistoflex Co., A Division of Unidynamics Corp.*, 854 F.2d 762, 771 (5th Cir.1988) (citation omitted). In this case, the "'possibility of a jury drawing a contrary inference sufficient to create a dispute as to a material fact does not reify to the point even of a thin vapor capable of being seen or realized by a reasonable

jury.' " *Amburgey*, 936 F.2d at 814 (citation omitted).

### III.

 Finally, as to Davis's state law claim that he was defamed before the MESC, the court is of the opinion that summary dismissal is appropriate. Under Mississippi state law, communications between an employer and the MESC are absolutely privileged unless false in fact and maliciously made for the purpose of denying benefits. *See* Miss.Code Ann. § 71–5–131; *Gordon v. Tenneco Retail Service Co.*, 666 F.Supp. 908, 912 (N.D.Miss.1987). Here, Davis has once again presented no more than a mere scintilla of evidence to support his claim that the statements made by Ms. Shearer at the MESC hearing were false and malicious and thus outside the scope of the privilege.

### CONCLUSION

Having carefully reviewed all materials presented, the argument of counsel, and the pertinent caselaw, the court is of the opinion that Davis's EEOC charge was untimely, thus foreclosing this court's consideration of his ADEA charge. Alternatively, assuming the charge was timely, the court finds summary dismissal is appropriate as no genuine issue of material fact exists with regard to the allegations of pretext. Finally, the court finds summary judgment is warranted on Davis's state law claim of defamation.

An appropriate final judgment shall issue.

### FINAL JUDGMENT

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

That the motion for summary judgment filed by defendant Ceco Building Systems is well taken and is granted;

That this cause is hereby dismissed with prejudice with all costs to be taxed against plaintiff.

SO ORDERED.